**D**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ULSTER
-----------------------------------------------------------------------X

TNHYIF, INC.,                                           Index No.:  12-3216

                          Plaintiff,

                                                        AFFIRMATION IN
                 -against-                              REPLY TO
                                                        OPPOSITION TO
                                                        MOTION TO MODIFY
VINEYARD COMMONS HOLDINGS, LLC,                         ORDER APPOINTING
WORKERS' COMPENSATION BOARD OF THE                      RECEIVER
STATE OF NEW YORK, NEW YORK STATE
DEPARTMENT OF LABOR, VINEYARD
COMMONS CLUBHOUSE, INC., VINEYARD
COMMONS APARTMENTS INC., and
"JOHN DOE NO. 1" through "JANE DOE NO. 12",
the last twelve names being fictitious and unknown
to Plaintiff, the person or parties intended being
tenants, occupants, persons or corporations, if any,
having or claiming an interest in or lien upon the
Premises, described in the Complaint,

                          Defendants.

-----------------------------------------------------------------------X

        Robert A. Weis, Esq., an attorney duly admitted to practice law before the Courts of the

State of New York, affirms, under penalties of perjury, as follows:

        1.  I am associated with the Law Firm of William G. Sayegh, attorneys for Defendant

            Vineyard Commons Clubhouse, Inc. (hereinafter "VCC') and Defendant Vineyard

            Commons Apartments Inc. (hereinafter "VCA") in the above captioned matter and as such

            I am fully familiar with the facts and circumstances surrounding this matter.

        2.  I submit this Affirmation in opposition and reply to the opposition and cross-motion filed

            on October 17, 2012 on behalf of Plaintiff, TNHYIF, Inc. and in further support of the

            Motion made by Defendants, VCC and VCA, filed on October 2, 2012.

3.  As set forth in the Affidavit of Mark Fonte, President of VCC and VCA dated November 26, 2012, submitted herewith, VCA has remitted the security deposits in accordance with the Order Appointing Receiver (see Exhibit "A" which is a copy of the check and transmittal letter) and has provided the Receiver and all parties with the documents it possessed that were sought by the Receiver concerning the property.

4.  At the outset it should be noted that Plaintiff and the Receiver have failed to oppose that portion of the motion of VCC, and VCA, seeking access to the property to retrieve its personal property should be immediately granted. Attached hereto as Exhibit "B" is my prior correspondence to the Receiver which referred to and included a copy of the title and registration for the Chevy van.

5.  As to the Mortgagor's desire that this Court ignore certain leases at the expense of VCA and VCC, counsel has failed to provide any evidence to support its theory that there was a fraud or a scheme designed to interfere with the rights of the mortgagor earlier this year, prior to the mortgagor's involvement in the property. The theory alone is not sufficient to defeat VCC and VCA's motion based upon their bargained for contractual rights and the theory is simply unsupported by any proof whatsoever.

6.  The mortgagor purchased the mortgage with full knowledge of the financial circumstances of the project and if it did not, its failure to perform any due diligence should not now form the foundation of a baseless claim that it is entitled to be rescued by the equitable powers of this Court. As to the Receiver, it should be surely beyond dispute that he possesses no rights that are superior to the mortgagor it has been appointed to protect. The Plaintiff mortgagor purchased the mortgage for less than half of its face value and obviously was or should have been well aware of the financial condition and circumstances surrounding the

project. Any suggestion that Plaintiff would have invested between ten and twenty million dollars without such due diligence should be rejected by this Court and if it were to be accepted, such a monumental failure is not the fault or responsibility to redress by anyone, including this Court.

7. Further, so that the Plaintiff's arguments are put into proper context, VCC and VCA were not the Owners of the property, were not the agents of the Owner and were not responsible for the Borrower's dealings with the aforementioned note and mortgage with the prior mortgage holder, Love Funding Corporation in this project which involved federally guaranteed construction funds.

8. The Moving Defendants are tenants of the premises who entered into the Master Leases with the Owner. The Master Leases were negotiated by the moving Defendants with the requirement that Moving Defendants would collect their own rent and in the then existing financially unstable environment, properly service the needs and expectations of their subtenants. As a direct tenant of the borrower, VCC was also responsible for maintenance of the Clubhouse and pool. It outfitted the exercise facility and provided other services to its tenants. This did not amount to "schemes", but fully negotiated leases that provided the residents of the project with services to keep the existing tenants content and to attract new tenants in the context of a project whose owner was in poor financial condition.

9. The motion of VCA and VCC should be granted in view of the absence of any evidence of fraud or wrongdoing which would have to be provided by clear and convincing evidence. Further, the Mortgagor's cross motion must fail since it has not established a likelihood of success upon the merits of is baseless assertion that the subleases should be set aside as if they never existed. To the extent the new mortgagor seeks to establish some sort of a fraud

in support of its request for a restraining order, it has failed to do so and of it actually intended to so, it should have requested a hearing.

10. As for the facts presented by the Plaintiff, they are not accurate. Plaintiff improperly asserts rights contained in the "Regulatory Agreement" between the owner and the Secretary of Housing and Urban Development. However, the Assignment of mortgage from the Secretary of Housing and Urban Development of Washington D.C. to TNHYIF, Inc. clearly states in paragraph 2 that the Regulatory Agreement referenced in the Mortgage is *excluded* from the Assignment of Mortgage. The page of the Assignment of mortgage containing the express exclusion is annexed hereto as Exhibit C, whereas the full document can be found as Exhibit E in Plaintiff's Affirmation dated October 16, 2012. Further, a plain reading of paragraph 14 of the Regulatory Agreement states that the instrument binds the Owner during "such further time as the Secretary shall be the owner, holder, or reinsurer of the property." As the Secretary of Housing and Urban Development is no long the owner, holder, or reinsurer of the property, the Plaintiff's purported reliance upon the Regulatory Agreement is misleading and inapplicable.

11. As such, Plaintiff's reliance upon Resolution Trust Corp. v. 53 W. 72nd St. Realty Associates, 91 CIV. 3299 (LMM), 1991 WL 156260 (S.D.N.Y Aug. 6, 1991) is misplaced since the Regulatory Agreement referring to the requirement that the lender approve leases was for the benefit of HUD which did not carry over to the current mortgage holder who need not consent to the existence or continuation of the subleases leases but is to be bound by them. Thus, this Southern District of New York opinion which relied upon language referring to a requirement to obtain a lender's consent to leases does not apply to the matter since the current mortgage holder possesses no rights under the Regulatory Agreement.

12. Further, to the extent Plaintiff claims that the mortgage herein expressly requires the Receiver refers to subleases and rent collected by sublessors, the mortgage does not and refers generally to the collection or rents, profits and income which is a basis for the movants' requested relief from the Court.

13. In addition, to the extent Plaintiff relies upon <u>Bank of Manhattan Trust Co. v. 571 Park Ave Corp.</u>, 263 N.Y. 57, 188 N.E. 156 (1933) as its basis to have this Court extinguish the moving tenant's contractual rights, it is misplaced in view of the particular facts of that case. In <u>Bank of Manhattan Trust</u>, a successor of the mortgagor entered into an agreement with a general creditor, where the general creditor was given one apartment at no cost in exchange for satisfaction of a prior debt. 263 NY at 60-61. The Court of Appeals held the "it was simply beyond the power of the parties either to appropriate the pledged rents to a different indebtedness, or to defeat the pledge by granting the use of the premises rent free." 263 NY at 63. In this case, VCC and VCA were not provided with a rent free apartment but negotiated Master leases and subleases which enabled the project to continue and placed it back on the path to success.

14. Further, VCA and VCC are not general creditors. The Moving Defendants were lessees and sublessors who were required to pay rent for the leased premises and provided services for its subtenants. <u>Bank of Manhattan Trust,</u> which dealt with a straight repayment of a debt in exchange for a rent free tenancy is not congruent to the facts presented to the Court in this case.

15. Plaintiffs also rely upon <u>New York City Community Preservation. Corp v. Michelin Associates,</u> 115 A.D.2d 715, 716-717 (2d Dep't 1985), which actually recognized that as a general rule, a "receiver of rents and profits in a mortgage foreclosure action is bound by

the agreement between the tenant and the mortgagor landlord," but the facts were not on par with the instant matter before the Court. 115 A.D.2d at 717. In <u>Michelin</u>, an employee of the mortgagor with no authority to make a lease on behalf of mortgagor, entered into a lease with a tenant for $1 per month for twenty years in exchange for an apparent sham job. This was an obviously inappropriate arrangement which bears no resemblance to the Master leases and subleases before this Court.

16. The moving Defendants entered into the Master leases with the owner who had the authority to enter into the leases for good and valuable consideration in view of all of the circumstances to keep the project moving forward.

17. In applying the <u>Michelin</u> case to this matter, in view of the totally different factual scenario presented by this case which involves an actual bargained for Master lease and actual services supplied by the sublessors to its subtenants and for the greater benefit of the property, this Court should follow the general rule cited above that a receiver of rents and profits in a mortgage foreclosure action is bound by the agreement between the tenant and owner even when circumstances exist such as in this case where the amount fixed as rent under the terms of the lease is less than the amount paid by subtenants.

18. Mortgagor's broad claim that it can ignore subleases and the rights of a tenants with subleases because of general mortgage language providing a mortgage holder with rents profit and income from the property ignores the holding of <u>Central Savings Bank v. Chatham Associates,</u> 54 A.D. 2d 873, 388 N.Y.S.2d 908 (First Dept 1976), cited previously in Movants' original memorandum of law in support of the movant's application. Further, the arguments asserted concerning the security interests granted by the Owner to the original mortgagor ignore the fact that the moving sublessors do not seek

to avoid their obligation to pay rent but do seek to enforce its right to collect rents from its subtenants. It is the Court and not the new mortgage holder or the Court appointed receiver that is empowered to determine the relative rights of the tenants and subtenants.

WHEREFORE, Defendants, Vineyard Commons Clubhouse, Inc. and Vineyard Commons Apartments Inc., respectfully request that the Court grant Defendants' Motion for an order modifying this Court's Order dated September 13, 2012.

Dated: Carmel, New York
      November 26, 2012

ROBERT A. WEIS, ESQ.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ULSTER

-------------------------------------------------------------------X

TNHYIF, INC.,

                              Plaintiff,                    Index No.:  12-3216

            - against -

VINEYARD COMMONS HOLDINGS, LLC,
WORKERS' COMPENSATION BOARD OF THE
STATE OF NEW YORK, NEW YORK STATE                          AFFIDAVIT
DEPARTMENT OF LABOR, VINEYARD
COMMONS CLUBHOUSE, INC., VINEYARD
COMMONS APARTMENTS INC., and
"JOHN DOE NO. 1" through "JANE DOE NO. 12",
the last twelve names being fictitious and unknown
to Plaintiff, the person or parties intended being
tenants, occupants, persons or corporations, if any,
having or claiming an interest in or lien upon the
Premises, described in the Complaint,

                              Defendants.

-------------------------------------------------------------------X

        MARK J. FONTE, being duly sworn, deposes and says:

1.      I am the President of Defendant Vineyard Commons Apartments Inc. and Defendant

Vineyard Commons Clubhouse Inc. and as such am fully familiar with the facts and

circumstances surrounding these proceedings.

2.      Initially, I wish to report to the Court that my company did have funds representing the

security deposits that were collected on behalf of Vineyard Commons Apartments Inc. The funds

were released from the Vineyard Commons Apartments security account for that purpose and

had not previously been provided to the Receiver because as a sublessor with subtenants, I was

under the impression that pending a decision and order of the Court regarding my company's

leases, I had to retain these funds. I have remitted these funds to the Receiver and now understand that the Court will hold the Receiver and not my company responsible for securing these funds.

3.      I have submitted a Bank check in the amount of $74,750.00 for the aforementioned funds to my counsel, annexed hereto as Exhibit A, who has submitted the check to the Receiver, Andrew P. Zweben along with a list of the tenants and the amount of funds deposited. I have attached a list of my company's subtenants, their apartment numbers and monthly rent.

4.      Vineyard Commons Apartments Inc. and Vineyard Commons Clubhouse Inc. have not collected any rent, license fees or other charges from sub-lessees of the mortgaged premises after receiving notice of the Receiver's appointment by Order Appointing Receiver.

5.      Aside from the aforementioned leases with sub-lessees, which my counsel has turned over to all parties in Exhibit H of the Order to Show Cause filed with the Court on October 2, 2012 within days of my knowledge of the Receiver's appointment and served upon the Receiver on October 9, 2012, I am not in possession of any other documents relating to the mortgaged premises.

6.      The Mortgagor's claims regarding documents were either mistakenly or intentionally made to mislead since to my understanding, the documents relating to the mortgaged premises were located in paper files and the computer system in the front office at the premises when the Receiver entered the property without warning on September 25, 2012 and along with a Deputy Sheriff threw Vineyard Commons Apartments Inc. and Vineyard Commons Clubhouse Inc. off the property. The Mortgagor's and the Receiver's alleged difficulties regarding concerning documents do not appear to be true and to the extent they are true are not related to anything done by or on behalf of my companies.

7.      To the extent the Receiver or the mortgagor claim to be frustrated by the alleged lack of access to documents or other information, it must be noted again that I am not the mortgagee, my companies are not the mortgagees and neither I nor my companies represent the mortgagees.

8.      Vineyard Commons Apartments Inc. and Vineyard Commons Clubhouse Inc. have not interfered in any way with the Mortgaged Premises or its possession, or with the Receiver's management thereof. In fact, my Companies sought relief from the Receiver's and mortgagor's improper actions from the Court within days of knowledge of the Receiver's appointment.

9.      Vineyard Commons Apartments Inc. and Vineyard Commons Clubhouse Inc. have not posted any notices to any residents of the Mortgaged premises, have not excluded any residents of Vineyard Commons from the use of any portion of the Mortgaged premises, and have not changed any locks on the Mortgaged premises.

10.     As to the claim that I met with and made statements concerning "documents" to the Receiver on September 25, 2012 when he entered the premises, it is completely false. I was not on the premises on that day and did not meet the Receiver on the premises on September 25, 2012 or otherwise have any communication with him.

11.     I wish to make clear that the Master Leases were not made to defraud anyone, but were entered upon good consideration for value, as described in my earlier Affidavit, dated October 5, 2012. The apparent failure of the new mortgagor who, upon information and belief, paid less than half of the face value of the mortgage to have performed any due diligence in its purchase of the mortgage, should not be the basis of any relief from this Court. I categorically deny the mortgagor's counsel's claim that I or my companies conspired in some way to circumvent or otherwise interfere with the mortgagor's lien. My companies entered into the master leases and subleases to protect themselves in what was a distressed real estate project and by becoming a

subtenant and sublessor, legally secured their right to direct payment from the subtenants. While this arrangement may not currently please the current mortgagor who recently purchased the mortgage, the current mortgagor was not involved with the property at the time and should not now be permitted to rewrite the conditions upon which its successful bid for the mortgage were based.

12.     The mortgagor who claims that it is somehow a victim but apparently paid less than half of the face value of the note was either aware of the conditions at the property including the subleases or it should have been aware of the subleases. The costs to mortgagor of the mortgagor's lack of due diligence should not be borne by my companies who were actually trying to keep the project going in a financially distressed environment at a time when the new mortgagor had nothing at all to do with the project. Further, to the extent that the Mortgagor was aware of the subleases, its request that the Court simply ignore them should not be granted which would amount to a bonus it did not intend to receive when it calculated its final offer for the purchase of the mortgage at less than 50% of its face value.

13.     The allegation that the Master Leases were entered into when the foreclosure and Appointment of Receiver was imminent is unsupportable because the actual intentions of the former Mortgage holder were not known to me.

14.     Further, notwithstanding the repeated claims made by those without knowledge to the contrary, I was not a managing agent nor were my companies managing agents of the subject property.

15.     Further, in addition to my request that this Court uphold the terms of my Companies leases with its subtenants and the Master leases entered into with the Owner, I wish to advise the the Court that a favorable response to my demand for return of my Company's personal property

is long overdue. The Receiver has failed to permit my company to access the property to return

its personal property and my demand for the return of the Chevy van, the golf cart, the computers

and computer server located in the clubhouse and personal property left at the clubhouse. As I

seek no other property on behalf of my companies and no party has opposed my request to return

these items of personal property, I again respectfully request an Order of this court immediately

granting access to the property to collect the aforementioned personal property together with an

order granting my Company's motion and such other further relief as the Court may deem just

and proper.


Dated: Carmel, New York
       November 26, 2012

                                            MARK J. FONTE


Sworn to Before Me This
26th Day of November, 2012

Notary Public

> JENIFER MALLERLY RIANO
> NOTARY PUBLIC STATE OF NEW YORK
> WESTCHESTER COUNTY
> LIC. #01RI6237282
> COMM. EXP. March 14, 2015

# Exhibit A



# SAYEGH LAW

THE LAW FIRM OF WILLIAM G. SAYEGH, P.C.

The Sayegh Building
65 Gleneida Avenue
Carmel, New York 10512
845•228•4200   sayeghlaw.com

Dutchess County
1100 Route 9
Fishkill, New York 12524

William G. Sayegh
Andrew W. Humphreys
Robert A. Weis
Giuseppina R. Lita
Kenneth S. Rones
Nicole K. Trivlis
Melissa R. Klepak
Naim Bajraktari, *Of Counsel*
Joseph S. Sayegh, *Of Counsel*

S. Barrett Hickman, *In Memorium*
*retired Justice of the Supreme
Court of the State of New York*

November 19, 2012

Andrew Zweben, Esq.
12 John Street
Kingston, NY 12401

Re:   **TNHYIF, Inc. v. Vineyard Commons Holdings, LLC, et. al.**
      **Ulster County Index No.: 12-3216**
      **Our File No.: 24528.01**

Dear Mr. Zweben:

Enclosed please find my client, Vineyard Apartments, Inc.'s draft in the amount of $74,750.00 representing the security deposits its subtenants deposited with it in accordance with the attached list.

Very truly yours,

Robert A. Weis
**The Law Firm of William G. Sayegh, P.C.**

RAW:bs
Enc.



**OFFICIAL CHECK**

004207

Date: 11/19/12

Branch:   0001

REMITTER VINEYARD COMMONS APARTMENTS INC

**PAY**
**TO THE**
**ORDER OF**

EXACTLY **74,750 AND 00/100 DOLLARS          $74,750.00

ANDREW ZWEBEN AS ATTORNEY

SECURITY DEPOSITS

⑈000000420⑈ ⑆021914544⑆ 3⑈999905⑈



**OFFICIAL CHECK**

004207

|                |                 |             |              |
|----------------|-----------------|-------------|--------------|
| **DATE:** 11/19/12 | **BRANCH:** | 0001 | |
|                | **ORIGINATOR:** | R72JCOPE | |

**REMITTER:**   VINEYARD COMMONS APARTMENTS INC
1955 CENTRAL PARK AVENUE
YONKERS, NY 10710

**TIME:**    1:34:45
**CK AMT:**   $74,750.00
**FEE AMT:**      $.00

**TO:**   ANDREW ZWEBEN AS ATTORNEY

**TOTAL:**   $74,750.00

SECURITY DEPOSITS          **NON-NEGOTIABLE**

## Vineyard Commons Apartments Inc Rent Security Report

| Apt # | Name | Security Deposit |
|---|---|---|
| 105 | Charles & Patricia Leimgruber | $1,675.00 |
| 120 | John & Paula Perez | $1,550.00 |
| 126 | Carmen Byrne | $1,975.00 |
| 128 | Joan Mitsner | $1,725.00 |
| 133 | Irving & Sheila Mayer | $2,000.00 |
| 140 | Ronald & Sandra Kochis | $1,925.00 |
| 142 | George & Jean Vizvary | $2,100.00 |
| 143 | Duane & Barbara Smith | $1,825.00 |
| 145 | Frederick & Debra Brough | $1,625.00 |
| 312 | Karen Soma | $1,775.00 |
| 320 | Joseph & Ada DelGado | $1,550.00 |
| 321 | Carol Guliani | $1,625.00 |
| 322 | John & Anna Vittoria | $1,625.00 |
| 323 | Giacomo & Elizabeth Barnello | $1,825.00 |
| 324 | George & Viviana Delehanty | $1,825.00 |
| 326 | John & Susan Sestanovich | $2,000.00 |
| 327 | Robert & Thelma Kuchemeister | $1,550.00 |
| 330 | Dorinda Horne | $1,650.00 |
| 331 | Joan Matheis | $1,800.00 |
| 337 | Marguerite DeVenuto | $1,725.00 |
| 342 | Barbara Congelosi | $2,000.00 |
| 503 | Louis Fiore | $1,775.00 |
| 512 | Coleman & Dollyann Briggs | $1,600.00 |
| 519 | Angelina Hansen | $1,550.00 |
| 524 | Melinda Terwilliger | $1,825.00 |
| 525 | Thomas & Francine Canino | $2,000.00 |
| 526 | Gene & Susan Riechardt | $2,000.00 |
| 537 | Patti Bagnall | $1,625.00 |
| 542 | Eugene & Pamela Campanaro | $2,125.00 |
| 543 | Nadine Fein | $1,825.00 |
| 604 | Jack Giamportone | $1,775.00 |
| 606 | Phyllis VanSchaack | $1,575.00 |
| 610 | John Soltes | $1,900.00 |
| 615 | Joanne Morrow | $1,525.00 |
| 619 | Leonard & Carol Nectow | $2,000.00 |
| 624 | Richard & Angelina Brescia | $1,825.00 |
| 625 | Marilyn Spica | $1,825.00 |
| 628 | Joseph & Melanie Amodeo | $2,500.00 |
| 629 | Takenori Tamai | $1,825.00 |
| 636 | Robert Singleton | $1,825.00 |
| 639 | Peta Smith | $2,500.00 |

$74,750.00

# Exhibit B



# SAYEGH LAW

THE LAW FIRM OF WILLIAM G. SAYEGH, P.C.

The Sayegh Building
65 Gleneida Avenue
Carmel, New York 10512
845•228•4200  sayeghlaw.com

Dutchess County
1100 Route 9
Fishkill, New York 12524

William G. Sayegh
Andrew W. Humphreys
Robert A. Weis
Giuseppina R. Lita
Kenneth S. Rones
Nicole K. Trivlis
Melissa R. Klepak
Naim Bajraktari, *Of Counsel*
Joseph S. Sayegh, *Of Counsel*

S. Barrett Hickman, *In Memorium*
*retired Justice of the Supreme
Court of the State of New York*

October 24, 2012

**BY FACSIMILE** (845-338-8947)

Andrew Zweben, Esq.
12 John Street
Kingston, NY 12401

Re:   **TNHYIF, Inc. v. Vineyard Commons Holdings, LLC, et. al.**
      **Ulster County Index No.: 12-3216**
      **Our File No.: 24528.01**

Dear Mr. Zweben:

I have enclosed a copy of the title and registration in connection with the vehicle located at the subject property. As we have discussed, my client, Vineyard Commons Clubhouse, Inc. owns the vehicle and does not consent to its use by you or your managing agent and respectfully demands access to the locked space in which it is currently located so that the vehicle can be retrieved by my client.

In addition, my client owns the golf cart currently located at the property and also seeks its immediate retrieval. There are no titles issued to golf carts in New York State and there should be no competing claim of ownership. This correspondence should evidence my client's claim of ownership and serve to protect your interests in this regard.

We would like to set up a time in the immediate future to arrange for the retrieval of my client's property. There is no justification for any further delay in providing my client access to its property so that it may be retrieved from the grounds of Vineyard Commons. Please let me know at your earliest opportunity when my client may do so.

Thank you for your kind attention to this matter.

Very truly yours,

Robert A. Weis
**The Law Firm of William G. Sayegh, P.C.**

RAW/pah
Enc.

VINEYARD COMMONS
CLUBHOUSE INC
1955 CENTRAL PARK AV
YONKERS          NY 10710

00119



### CERTIFICATE OF TITLE

**NEW YORK STATE**                                    www.dmv.ny.gov

| Title and Identification No. | Year | Make | Model Code | Body/Hull | Document No. |
|---|---|---|---|---|---|
| 1GAHG39K891183488 1GAHG39K891183488 | 2009 | CHEVR | EXP | SUBN | 390471N |

| Color | Wt/Sts/Lgth | Fuel | Cyl/Prop. | New or Used | Type of Title | Date Issued |
|---|---|---|---|---|---|---|
| WH | 6417 | GAS | 8 | USED | VEHICLE | 10/16/12 |

Name and Address of Owner(s)
VINEYARD COMMONS
CLUBHOUSE INC
1955 CENTRAL PARK AV
YONKERS NY        10710

**ODOMETER READING:    16487**
16487
**ACTUAL MILEAGE**

This document is your proof of ownership for this vehicle, boat or manufactured home. Keep it in a safe place, not with your license or registration or in your vehicle or boat. To dispose of your vehicle, boat or manufactured home, complete the transfer section on the back and give this title to the new owner.

Lienholder                                    Lienholder
* NO LIENS RECORDED *              * NO LIENS RECORDED *

Lienholder                                    Lienholder
* NO LIENS RECORDED *              * NO LIENS RECORDED *

MV-999 (1/11)

**DEPARTMENT OF MOTOR VEHICLES**



the number on the

o a Motor Vehicles office.

Keep this document to show to the police and courts.

MV-60FER (3/14)   NEW YORK STATE REGISTRATION DOCUMENT

G PAS
GCB5259
2009 CHEVR NONTRANSFERABLE
SUBN WH    1GAHG39K891183488
006417 G 8  FV785667 SEP 25 2012
WtSeats   FuelCyl   PCM WFL954
VINEYARD COMMONS          Expires 09/30/14
CLUBHOUSE INC                *NYMA*
1955 CENTRAL PARK AV            63.50
YONKERS          NY 10710   ANNUAL CHG
                                 AMT PAID (INCL ADD CHG)

FV785667  VOID IF ALTERED EXCEPT FOR ADDRESS    689.88  ded for the next owner.

n your document

# Exhibit C

**After recording, please
return to:**

Kenneth F. Jurist, Esq.
Cuddy & Feder LLP
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601

**This instrument
prepared by:**

Gregory J. Bolton, Esq.
U.S. Department of Housing and
Urban Development
Office of General Counsel
451 Seventh Street S.W.
Washington, D.C. 20410

## ASSIGNMENT OF MORTGAGE

FHA Project No.: 012-35693
Project Name: Vineyard Apartments
City, State: Lloyd, New York

THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT OF
WASHINGTON, D.C. ("HUD"), 451 Seventh Street S.W., Washington, DC 20410, in
consideration of Ten Dollars ($10.00) and other good and valuable consideration, hereby assigns,
transfers, sets over and conveys to TNHYIF, Inc., c/o True North Management Group, 44 So.
Broadway, 10th Floor, White Plains, New York 10601 ("Assignee"), without recourse, the
following:

1.  that certain Mortgage made by Vineyard Commons Holdings, LLC, mortgagor, to Love
    Funding Corporation, mortgagee, dated July 2, 2009, in the principal amount of
    $46,545,000.00, and recorded August 3, 2009, as Instrument No. 2009-00012292, in the
    Ulster County Clerk's Office, and assigned by Assignment of Mortgage, dated February
    17, 2012, from Love Funding Corporation to the Secretary of Housing and Urban
    Development of Washington D.C., and his successors and assigns, duly recorded in the
    Ulster County Clerk's Office on February 23, 2012 as Instrument No. 2012-00002554
    (the "Mortgage"), together with the note secured by the Mortgage (the "Note"); and

2.  such other documents, agreements, instruments and other collateral (excluding the
    Regulatory Agreement referenced in the Mortgage) which evidence, secure or otherwise
    relate to HUD's right, title or interest in and to the Mortgage and/or the Note, including
    without limitation the security agreement, if any, and the title insurance policies and
    hazard insurance policies that may presently be in effect.

*This assignment is not subject to the requirements of Section 275
of the Real Property Law because it is an assignment
within the secondary mortgage market.*

CHECKED

ENTERED

MARKIOFF

C&F: 1987686.1

*✓ New York/Title (Kevin)*

12293 Page 5 of 13

accordance with the terms of this Agreement until such time as the Secretary in his discretion determines that the Owners are again in a position to operate the project in accordance with the terms of this Agreement and in compliance with the requirements of the note and mortgage.

(d)     Apply to any court, State or Federal, for specific performance of this Agreement, for an injunction against any violation of the Agreement, for the appointment of a receiver to take over and operate the project in accordance with the terms of this Agreement, or for such other relief as may be appropriate, since the injury to the Secretary arising from a default under any of the terms of this Agreement would be irreparable and the amount of damage would be difficult to ascertain.

12.     As security for the payment due under this Agreement to the reserve fund for replacements, and to secure the Secretary because of his liability under the endorsement of the note for insurance, and as security for the other obligations under this Agreement, the Owners respectively assign, pledge and mortgage to the Secretary their rights to the rents, profits, income and charges of whatsoever sort which they may receive or be entitled to receive from the operation of the mortgaged property, subject, however, to any assignment of rents in the insured mortgage referred to herein. Until a default is declared under this Agreement, however, permission is granted to Owners to collect and retain under the provisions of this Agreement such rents, profits, income, and charges, but upon default this permission is terminated as to all rents due or collected thereafter.

13.     As used in this Agreement the term:

(a)     "Mortgage" includes "Deed of Trust", "Chattel Mortgage", "Security Instrument", and any other security for the note identified herein, and endorsed for insurance or held by the Secretary;

(b)     "Mortgagee" refers to the holder of the mortgage identified herein, its successors and assigns;

(c)     "Owners" refers to the persons named in the first paragraph hereof and designated as Owners, their successors, heirs and assigns;

(d)     "Mortgaged Property" includes all property, real, personal or mixed, covered by the mortgage or mortgages securing the note endorsed for insurance or held by the Secretary;

(e)     "Project" includes the mortgaged property and all its other assets of whatsoever nature or wheresoever situate, used in or owned by the business conducted on said mortgaged property, which business is providing housing and other activities as are incidental thereto;

(f)     "Surplus Cash" means any cash remaining after:

(1)     the payment of:

(i)     All sums due or currently required to be paid under the terms of any mortgage or note insured or held by the Secretary;

(ii)     All amounts required to be deposited in the reserve fund for replacements;

(iii)     All obligations of the project other than the insured mortgage unless funds for payment are set aside or deferment of payment has been approved by the Secretary; and

(2)     the segregation of:

(i)     An amount equal to the aggregate of all special funds required to be maintained by the project; and

(ii)     All tenant security deposits held.

(g)     "Distribution" means any withdrawal or taking of cash or any assets of the project, including the segregation of cash or assets for subsequent withdrawal within the limitations of Paragraph 6(e) hereof, and excluding payment for reasonable expenses incident to the operation and maintenance of the project.

(h)     "Default" means a default declared by the Secretary when a violation of this Agreement is not corrected to his satisfaction within the time allowed by this Agreement or such further time as may be allowed by the Secretary after written notice;

(i)     "Section" refers to a Section of the National Housing Act, as amended.

(j)     "Displaced persons or families" shall mean a family or families, or a person, displaced from an urban renewal area, or as the result of government action, or as a result of a major disaster as determined by the President pursuant to the Disaster Relief Act of 1970.

(k)     "Elderly person" means any person, married or single, who is sixty-two years of age or over.

14.     This instrument shall bind, and the benefits shall inure to, the respective Owners, their heirs, legal representatives, executors, administrators, successors in office or interest, and assigns, and to the Secretary and his successors so long as the contract of mortgage insurance continues in effect, and during such further time as the Secretary shall be the owner, holder, or reinsurer of the mortgage, or obligated to reinsure the mortgage.

15.     Owners warrant that they have not, and will not, execute any other agreement with provisions contradictory of, or in opposition to, the provisions hereof, and that, in any event, the requirements of this Agreement are paramount and controlling as to the rights and obligations set forth and supersede any other requirements in conflict therewith.

16.     The invalidity of any clause, part or provisions of this Agreement shall not affect the validity of the remaining portions thereof.

17.     The following Owners: Vineyard Commons Holdings, LLC and all members and managing members thereof

Do not assume personal liability for payments due under the note and mortgage, or for the payments to the reserve for replacements, or for matters not under their control, provided that said Owners shall remain liable under this Agreement only with respect to the matters hereinafter stated; namely:

(a)     for funds or property of the project coming into their hands which, by the provisions hereof, they are not entitled to retain; and

ND; 4819-3327-4883, v. 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ULSTER

Index No.: 12-3216

TNHYIF, INC.,

Plaintiff,

- against -

VINEYARD COMMONS HOLDINGS, LLC, WORKERS' COMPENSATION BOARD OF
THE STATE OF NEW YORK, NEW YORK STATE DEPARTMENT OF LABOR,
VINEYARD COMMONS CLUBHOUSE, INC., VINEYARD COMMONS APARTMENTS
INC., and "JOHN DOE NO. 1" through "JANE DOE NO. 12",

the last twelve names being fictitious and unknown to Plaintiff, the person or parties intended
being tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien
upon the Premises, described in the Complaint,

Defendants.

## AFFIRMATION AND AFFIDAVIT IN REPLY AND IN OPPOSITION
## WITH SUPPORTING EXHIBITS

### THE LAW FIRM OF WILLIAM G. SAYEGH, P.C.
*Attorney for Defendants*
VINEYARD COMMONS CLUBHOUSE, INC. and
VINEYARD COMMONS APARTMENTS INC.
*Office and P.O. Address*
65 Gleneida Avenue
Carmel, NY 10512
(845) 228-4200 Telephone;  (845) 228-4832 Fax

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State,
certify that upon information and belief and reasonable inquiry, the contentions contained in the annexed document
are not frivolous.

Dated: November 26, 2012

ROBERT A. WEIS, ESQ.

---

## PLEASE TAKE NOTICE

_____ that the within is a (certified) true copy of a
        entered in the office of the clerk of the within named Court on                 2012.
_____ that an Order of which the within is a  true copy will be presented for settlement to the
        _____ one of the judges of the within named Court
        on the         day of        , 2012.

Dated:              , 2012

                         From:   THE LAW FIRM OF WILLIAM G. SAYEGH, P.C.
                                 *Attorneys for*
                                 65 Gleneida Avenue
                                 Carmel, NY 10512
                                 (845) 228-4200

TO:

E

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ULSTER
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
TNHYIF, INC.,

                    PLAINTIFF,

    AGAINST

VINEYARD COMMONS HOLDINGS, LLC,
WORKERS' COMPENSATION BOARD OF THE
STATE OF NEW YORK, NEW YORK STATE
DEPARTMENT OF LABOR, VINEYARD COMMONS
CLUBHOUSE, INC., VINEYARD COMMONS
APARTMENTS INC., and "JOHN DOE NO. 1" through
"JANE DOE NO. 12", the last twelve names being
fictitious and unknown to Plaintiff, the persons or parties
intended being tenants, occupants, persons or
corporations, if any, having or claiming an interest in or
lien upon the Premises, described in the Complaint,

                    DEFENDANTS.
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**AFFDAVIT IN OPPOSITION**

INDEX NO. 12-3216

STATE OF NEW YORK)
           :ss.:
COUNTY OF ULSTER  )

    ROBERT D. COOK, being duly sworn, deposes and says:

    1.    That he is a member of the firm of Cook, Netter, Cloonan, Kurtz & Murphy, P.C., attorneys for the defendant, Vineyard Commons Holdings, LLC, in the above matter.

    2.    That this affidavit in submitted in opposition to plaintiff's order to show cause dated October 17, 2012 wherein plaintiff seeks certain relief directed against the defendants, including the defendant, Vineyard Commons Holdings, LLC.

    3.    As this Court is aware, the defendant, Vineyard Commons Holdings, LLC, is the owner of certain premises located in the Town of Lloyd, County of Ulster, New York, which is

the subject of a foreclosure proceeding commenced by the plaintiff. A receiver has previously been appointed by order of this Court.

The plaintiff, by this order to show cause, now seeks to compel the defendants, including the defendant, Vineyard Commons Holdings, LLC, to comply with the order appointing the receiver. Plaintiff also seeks to enjoin the defendants from interfering with the receiver having full use and access to the commons areas of the mortgage premises.

Specifically, with regard to the defendant, Vineyard Commons Holdings, LLC, the plaintiff is seeking an order compelling this defendant to provide a complete accounting to the receiver of rental payments received from tenants, security deposits received from tenants, and information regarding the leases to tenants.

By letter to the receiver, Andrew Zweben, from your deponent dated November 8, 2012, your deponent has recently provided Mr. Zweben with complete copies of the leases for those units leased directly by Vineyard Commons Holdings, LLC to the individual tenants. The letter also advised Mr. Zweben that the defendant is assembling information from the various management companies that managed the complex in order to obtain an accounting regarding rental payments and security deposits. The initial management company engaged to manage the property was Sunberry Management, which was thereafter replaced at the insistence of HUD by J.K. Scanlon Company, Inc./J.K. Scanlon Management, LLC as the management company. These companies handled the initial collection of rents and security deposits. The defendant, Vineyard Commons Holdings, LLC, has requested information and accountings from these management companies and upon receipt will provide the information to the receiver.

4.   The defendant, Vineyard Commons Holdings, LLC, has taken no steps or other actions to interfere with the obligations of the receiver appointed herein.

WHEREFORE, defendant, Vineyard Commons Holdings, LLC, respectfully requests that the relief requested in plaintiff's order to show cause as to Vineyard Commons Holdings, LLC be denied, together with such other and further relief as this Court may deem just and proper.

ROBERT D. COOK

Sworn to before me this 12th day of November, 2012.

NOTARY PUBLIC

CHERYL A. SUSSIN
Notary Public, State of New York
No. 01SU4947556
Qualified in Ulster County
My Commission Expires Feb. 27, 20 15

cc:   Cuddy & Feder, LLP
       445 Hamilton Avenue – 14th Fl.
       White Plains, NY  10601

       (w/o enc.)

State of New York, County of Ulster

CHERYL A. SUSSIN, being sworn says: I am not a party to the action, am over 18 years of age and reside at Saugerties, New York. On November 13, 2012, I served a copy of an Affidavit in Opposition by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

Cuddy & Feder, LLP
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601


CHERYL A. SUSSIN

Sworn to before me this 13th
day of November, 2012.


NOTARY PUBLIC

BEVERLY J. RIGNEY
Notary Public, State of New York
No. 01RI4657354
Qualified in Ulster County
Commission Expires October 31, 20 13

**F**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ULSTER

_____

TNHYIF, INC.,

                                    Plaintiff,

          - against -

VINEYARD COMMONS HOLDINGS, LLC,
WORKERS' COMPENSATION BOARD OF THE
STATE OF NEW YORK, NEW YORK STATE
DEPARTMENT OF LABOR, VINEYARD
COMMONS CLUBHOUSE, INC. VINEYARD
COMMONS APARTMENTS, INC., and
"JOHN DOE NO. 1" through "JANE DOE NO. 12"
the last twelve names being fictitious and
unknown to Plaintiff, the person or parties
intended being tenants, occupants, persons
or corporations, if any, having or claiming
an interest in or lien upon the Premises,
described in the Complaint,

                                    Defendant.
_____

**AFFIRMATION IN OPPOSITION
TO PLAINTIFF'S ORDER TO SHOW
CAUSE AND TO PLAINTIFF'S
MOTION TO AMEND COMPLAINT**

Index No.:  2012 / 3216

Assigned Judge:
Hon. Christopher E. Cahill, J.S.C.

          DAMON J. VELARDI, ESQ., an attorney duly admitted and licensed to practice law before the

Courts of the State of New York, hereby affirms the truth of the following statements under penalty of

perjury:

1. I am an attorney for the law firm of VASTI & VASTI, P.C., attorneys of record for HIGHLAND ONE,

    INC., which is not a named party in the above-entitled action, but which holds a leasehold interest

    in a portion of the property that is the subject of this action; and, as such, I am fully familiar with

    the facts and circumstances of this action.

2. I make this Affirmation in opposition to the following motions submitted to the Court in this action:

1                                                                                                                    1.

(i) the Plaintiff's Order to Show Cause, dated October 17, 2012, and returnable before the Court on November 16, 2012; and (ii) the Plaintiff's motion seeking leave to amend its Amended Complaint, pursuant to CPLR 3025(b), and returnable before the Court on November 16, 2012.

3. Both of Plaintiff's motions, while seeking a variety of forms of relief against a number of parties (named or not named in this action), are centered upon one primary allegation: that certain persons and corporations involved in this action have committed, and continue to commit, very serious acts of fraud against the Plaintiff.

4. This issue would not concern Mark Poierier, (the President and Owner of HIGHLAND ONE, INC.), and would appear only to be a fight between his landlord, VINEYARD COMMONS HOLDINGS, LLC, his landlord's Mortgagee, TNHYIF, INC., and other corporate tenants at the Vineyard property, except for the fact that Mr. Poierier and his restaurant business have been most unjustly implicated as being a part of this "conspiracy".

5. At the outset, I want to make it very clear to the Court that Mr. Poierier is a chef for a small restaurant located on the subject property, which he only recently purchased, and has never before operated his own business until now. He is not a sophisticated and affluent land owner or property development mogul like the Defendant, VINEYARD COMMONS HOLDINGS, LLC. He is nothing but a chef who owns a small restaurant which occupies property and runs its business at a location where, unfortunately for Mr. Poierier, placed him in a situation where he suddenly became embroiled in the affairs of large corporations and land owners and has been innocently dragged into a mortgage foreclosure action because his landlord has failed to pay its mortgage.

6. Mr. Poierier completely denies the allegation that he is in any way involved with a conspiracy to defraud the Plaintiff.

2                                                                                          1.

7.  Upon reading the supporting affirmation of the Plaintiff's attorney, Joshua E. Kimerling, Esq., I
    understand quite clearly why the Plaintiff would allege that the Vineyard entities participated in a
    fraudulent scheme to shield the Defendant from paying the Plaintiff the full rents and value of the
    property that is the subject of this action. However, what I do not understand is how the Plaintiff
    could infer that Mr. Poierier is somehow involved with this scheme, or is a co-conspirator, simply
    because his lease agreement closely resembles the lease agreements used between the Vineyard
    entities. The similarity between Mr. Poierier's lease and the Vineyard Commons Apartments, Inc.
    and Vineyard Commons Clubhouse, Inc. leases is the one and only piece of evidence, (if you can
    even call it "evidence"), that Mr. Poierier is involved in a conspiracy to defraud TNHYIF, Inc, a
    corporation which bears no relationship, interest or affiliation with Mr. Poierier. What is more, the
    allegation is that Mr. Poierier is assisting his landlord to defraud its creditor and Mortgagee. Why
    would Mr. Poierier be interested in teaming up with his corporate landlord to assist it in such an
    endeavor, when his landlord is putting Mr. Poierier's newly formed and innocent restaurant
    business in jeopardy because it has failed to pay its mortgage? The only other allegation that the
    Plaintiff points out is the allegation that he was uncooperative with the Receiver, when on an
    afternoon on October 10, 2012, unknown men barged into Mr. Poierier's restaurant and began
    making demands for keys and threatening to change locks, preventing him from being able to fully
    carry out his restaurant business and threatening contempt of court. If Mr. Poierier seemed
    somewhat uncooperative initially in the face of such an introduction to the Receiver, respectfully, he
    should be forgiven. It was not so unreasonable under the circumstances.

8.  Nevertheless, it should be noted that Mr. Poierier consulted with your affirmant's office that very
    afternoon, and was advised to cooperate with the Receiver to the extent that he was required to by

3

1.

law or order of the court, which he has done ever since.

9.  As set forth in Mr. Poierier's annexed supporting affidavit, he started out as a Sous-Chef for the restaurant located on the Vineyard Property (which at the time was known as "Bistro at Vineyard Commons", and which would later become known as "Bistro 300"). Upon Mr. Poierier's information and belief, the restaurant, at that time, was owned and operated by an entity known as JKS Management, and an individual by the name of Michael Barnett was a private restaurant investor. Michael Barnett is married to Denise Barnett who is an agent of Vineyard Commons Holdings, LLC, authorized to sign its leases. The Head Chef of the restaurant was Chris Diesing.

10. In or around January, 2011, the owners of the restaurant realized that it was suffering financially and it was decided that several of its employees would be laid off, including Mark Poierier, who was laid off as Sous-Chef for the restaurant on or about January 26, 2011.

11. Shortly thereafter, the Head Chef resigned his position out of frustration with the changes being made and Michael Barnett then contacted Mr. Poierier and asked that he return to the restaurant to run it as Head Chef, and to ultimately purchase the restaurant's good will and equipment so as to become the official owner of the restaurant. Mr. Poierier graciously accepted the offer.

12. Mr. Poierier entered into a letter of intent with Vineyard Commons Holdings, LLC with regard to leasing the restaurant space at the Vineyard property, where his restaurant would operate. The letter of intent set forth specific regulations regarding the operations of the restaurant, and certain requirements involving advertising and offering the restaurant's services as an amenity to the residents of the Vineyard property.

13. Accordingly, Mr. Poierier formed a corporation, which would become the actual owner of the Restaurant, called Highland One, Inc. As Highland One, Inc. does not sound like a very appetizing

4

1.

restaurant, Mr. Poierier decided to name the restaurant "Marco Polo", and filed a certificate of assumed name. Mr. Poierier handled all of the corporation formation filings and certificate of assumed name himself with the assistance of his accountant, Savvas Tsentides, who is located in Astoria, New York. He was not assisted, and was not directed, by any agent or employee of Vineyard Commons Holdings, LLC with regard to the formation of his corporation, Highland One, Inc. He also purchased the restaurant's equipment for $50,000.00 as a lump sum cash payment, from Michael Barnett.

14. Mr. Poierier negotiated the terms of the lease agreement, into which Highland One, Inc. and Vineyard Commons Holdings, LLC would enter, with Michael Barnett, who, as mentioned above, was the husband of Denise Barnett, the agent of Vineyard Commons Holdings, LLC authorized to sign the final lease document.

15. As part of the lease negotiations, Mr. Poierier and Mr. Barnett specifically discussed the very serious issue of the limitation of prospective restaurant patrons, given the fact that the restaurant was to primarily offer its services as an amenity to the Vineyard property's residents and was located within the enclosed and secluded Vineyard property, (not readily accessible or known to the general public). Apparently, the local zoning ordinances of the Town of Lloyd forbid the restaurant from erecting a sign at the entrance of the Vineyard property by the main public highway where members of the general public could see. While your affirmant has not had sufficient opportunity to verify this fact with the Town of Lloyd prior to the deadline to serve the instant papers, at the very least, Mr. Poierier had the understanding, based on conversations he had with members of Vineyard Commons Holdings, LLC, that such was the case. Furthermore, at the time Mr. Poierier and Vineyard Commons Holdings, LLC were negotiating the lease agreement, many of the residential

5

1.

units at the Vineyard property were vacant and for that reason, the flow of prospective patrons of the restaurant was further limited at that time.

16. Due to the foregoing, it was contemplated and foreseen by both Mr. Poierier, Mr. Barnett and Vineyard Commons Holdings, LLC, that the restaurant would have much difficulty earning a profit, let alone earning enough funds to keep the restaurant operating and paying its employees. Accordingly, Mr. Poierier and Vineyard Commons Holdings, LLC agreed that the monthly rental obligation under the lease agreement would be set at only $250.00 per month and that Vineyard Commons Holdings, LLC would pay the restaurant a monthly subsidy in the sum of $3,000.00 while vacancies in the residential units remained, and $1,500.00 per month when at least 95% of the residential units were occupied by residents.

17. Upon information and belief, Vineyard Commons Holdings, LLC had valid consideration for entering into the lease agreement with the restaurant at a low monthly rent of $250.00 and with the payment by Vineyard of the aforesaid monthly subsidy, despite the appearance that such a lease agreement seems highly in favor of the tenant and unfavorable to the landlord, and despite the fact that the Plaintiff has termed such lease as a "sweat heart" deal.

18. The fact of the matter is that the existence of a restaurant on the Vineyard property as an amenity for the Vineyard property residents was a quite attractive selling point which would help Vineyard Commons Holdings, LLC attract residents at the property, and build its business. It also provided the most convenient and enjoyable amenity, among the other offered amenities, for the Vineyard residents, as they are all over the age of 55 years (as the property is for adult and senior citizen residents only), and many are elderly and even disabled. Having a restaurant and bar within their immediate community and within their general residence location is highly convenient for the

6                                                                                   1.

residents.

19. Mr. Poierier knows the foregoing to be true based on conversations he has had with the Vineyard residents and patrons of his restaurant.

20. Furthermore, upon review of the Vineyard Commons website primary focus is placed on the restaurant as an amenity adding to the luxurious lifestyle afforded to residents at Vineyard Commons. In addition, a daily Craigslist advertise seeking residents at the Vineyard Commons property, again focuses on the restaurant as its chief and most attractive amenity offered to its residents.

21. Accordingly, it is clear that the existence of the restaurant on the property was and is the chief advertising point for Vineyard Commons Holdings, LLC in obtaining residents at the property and is a major part of its selling point for its real estate holding business at the Vineyard property.

22. The foregoing facts demonstrate that keeping the Marco Polo restaurant in business by limiting its overhead expenses in view of the unique circumstances which limits its business from restaurant patrons, was and continues to be a chief concern for Vineyard Commons Holdings, LLC, as the restaurant was and remains one of its top selling and advertising points and one of the most, if not the most, significant conveniences for its current residents.

23. In addition, the monthly subsidy of $3,000.00 or $1,500.00 from the landlord does not present a hardship for the landlord for the following reasons: Upon a review of the underlying Order to Show Cause submitted by the Vineyard Defendants, it appears that the residential units on the Vineyard Commons property produce rental income ranging from $1,550.00 to $2,100.00. While it is understood, based on the supporting papers contained in the Vineyard Defendants' Order to Show Cause, that Vineyard Commons Holdings, LLC obtains only $540.00 per month for seventy-one

7                                                                                                                    1.

units, it also understood that, upon Mr. Poierier's information and belief, there are approximately 180 units on the property. With 185 units on the property, the cost to the landlord to pay the $3,000.00 per month subsidy to Highland One, Inc. would only be $16.22 from each unit's monthly rental payments. Viewed in this manner, the Court can see that a $3,000.00 per month subsidy does not present a hardship to the landlord, and is not so grossly in favor of Highland One, Inc. and detrimental to Vineyard Commons Holdings, LLC as to render this provision in the lease unconscionable or to indicate that Vineyard Commons Holdings, LLC could not have had valid consideration for agreeing to this provision.

24. The allegation in paragraph "14" of Mr. Kimerling's affirmation that Highland One, Inc. is affiliated or a part of the Vineyard entities' conspiracy to defraud the Plaintiff due to its "sweat heart" deal is therefore completely against the weight of the evidence, especially since the allegation is based entirely upon the mere fact that the lease agreement between Highland One, Inc. and Vineyard Commons Holdings, LLC utilizes the same "Master Lease" form used among the Vineyard entities.

25. While the "Master Lease" agreement entered into between Highland One, Inc. and Vineyard Commons Holdings, LLC may closely resemble the "Master Lease" agreement entered into by the Vineyard entities, such certainly does not warrant the highly speculative inference that Highland One, Inc. must be playing a part in the alleged conspiracy and scheme to defraud the Mortgagee.

26. Vineyard Commons Holdings, LLC is a sophisticated real estate development company and owner and landlord of rental property. Landlords will often utilize their own lease agreement forms for all of their tenants. The fact that many tenants' lease agreements resemble each other at a specific property indicates nothing more than the fact that these tenants share a common landlord who utilizes a specific lease agreement form that was probably drafted by the landlord's attorneys.

8                                                                                                    1.

27. That Highland One, Inc. must be a co-conspirator in a fraudulent scheme just because its lease agreement closely resembles the lease agreements held by the other corporate tenants at the property, who are implicated in the fraudulent scheme, is an unreasonable and highly overreaching inference. Such conclusion is simply unwarranted if it is based on this evidence alone.

28. Mr. Poierier's restaurant business (as one of the tenants of the property) can be equated to the residential tenants of the Vineyard property, as the Marco Polo restaurant is nothing more than an occupant of the premises like its residents. Unlike Vineyard Commons Apartments, Inc. and Vineyard Commons Clubhouse, Inc., who are alleged to be conspirators in the scheme to defraud the Mortgagee, Highland One, Inc. does not rent out its leased space to any other person or entity. It simply occupies its leased space and carries on its business at that location. Vineyard Commons Apartments, Inc. and Vineyard Commons Clubhouse, Inc., on the other hand, do not occupy the spaces they rent from Vineyard Commons Holdings, LLC, but instead sub-lease the spaces out to other persons or entities for a profit, (at least this is one explanation of what these corporations are doing).

29. On the contrary, Highland One, Inc. was formed for the specific purpose of carrying on a restaurant business, and was formed by the restaurant's own head chef, who makes his living cooking at a restaurant, not developing large real estate properties or profiting from rents and sub-rents and sub-sub-rents.

30. Highland One, Inc. was formed specifically because the head chef of the previous restaurant resigned and Vineyard Commons Holdings, LLC wanted Mr. Poierier to operate a restaurant on the Vineyard property, which was so important for its residents and the owner of the property. Mr. Poierier wisely chose to incorporate the business. Unlike Vineyard Commons Apartments, Inc. and

9                                                                                                1.

Vineyard Commons Clubhouse, Inc., which appear to have been formed either to make a profit in the real estate business or to shield rental income from the Mortgagee as the Plaintiff alleges, Highland One, Inc. was formed to carry on a restaurant business within a thriving community, and Highland One, Inc. is free to either expand to other locations, (completely unassociated with Vineyard Commons), or upon termination of the lease to simply move to another location entirely. Vineyard Commons Apartments, Inc. and Vineyard Commons Clubhouse, Inc., on the other hand, are clearly tied to and necessarily connected to the Vineyard Commons property, and bear names that are highly similar to the Borrower and land owner, Vineyard Commons Holdings, LLC.

31. Mr. Poierier takes issue with the demand in paragraph "16" of Mr. Kimerling's affirmation that Highland One, Inc. should be enjoined from excluding any residents and the Receiver from having full access to the theatre, community ballroom, lounges, lobbies or any other common space. Mr. Poierier has never excluded residents from these amenity spaces, except for very temporary and short periods of time in accordance with his rights under the lease, which states that Highland One, Inc. has primary use, access and control over such amenity spaces in order to carry on its restaurant business within these amenity spaces for the benefit of the Vineyard property residents. Events catered by the restaurant are one of the primary means of business and income for the restaurant and one of the most convenient amenities for the residents. Examples of some of such catering events within the amenity spaces are graduation ceremonies, baby showers, bridal showers, weddings, "dinner and a movie" events in the theatre or sports events in the theatre with "tailgate" food and alcoholic beverages.

32. Mr. Poierier has always posted notices to the residents well in advance of the date of these special events when an amenity space was going to be reserved for a specific event or for a specific

10                                                                                          1.

resident, and such reservations have rarely lasted for more than a few hours.

33. After this Court issued its Temporary Restraining Order on October 17, 2012, Mr. Poierier has posted no notices and made no reservations of any amenity spaces without first obtaining the permission from the Receiver. Mr. Poierier asks only that the Receiver be mindful of the fact that special catering events within the amenity spaces from time to time are an important and essential aspect of keeping the Marco Polo restaurant in business, and he asks that the Receiver be reasonable in granting or denying the restaurant permission to hold these events.

34. Mr. Poierier also takes issue with the allegation in paragraph "14" of Mr. Kimerling's affirmation that he has taken affirmative steps to interfere with the Receiver's control of the property, especially with regard to how Mr. Kimerling claims such interference is further evidence that Mr. Poierier may be a party to the Vineyard entities' conspiracy to defraud the Plaintiff.

35. Mr. Poierier has only recently taken on the full responsibilities of operating a restaurant business and becoming a member of a corporation, as prior to this point, he was the restaurant's Sous-Chef, and his sole means of income was as an employee of the restaurant receiving a paycheck. He has no knowledge or experience with foreclosure actions involving mortgages in the 10s of millions, and no knowledge of mass evictions of large residential rental communities.

36. Prior to consulting with an attorney, when the Receiver introduced himself to Mr. Poierier by barging into his restaurant, threatening to change locks and preventi Mr. Poierier from accessing spaces he believed he was leasing and spaces essential to the very operation of his business, Mr. Poierier was confused and unaware of his rights as a tenant of the property. While it may seem that Mr. Poierier was initially uncooperative with the Receiver, that is only because he was suddenly and without warning being excluded from areas where he stored restaurant supplies and areas where

1.

he had electronic equipment essential to the operation of his business such as credit card equipment. He also feared that he was being removed from his restaurant without the opportunity to be heard in court. Highland One, Inc. is owner of all equipment in the restaurant, which cost Mr. Poierier $50,000.00, and which is, for obvious reasons, essential to the operation of his business.

37. Once Mr. Poierier consulted with your affirmant's office, he was advised to cooperate with the demands of the Receiver until the issues were further explored. At such point, Mr. Poierier became, and continues to be, very cooperative with the Receiver and has complied with the Temporary Restraining Order entered by the Court on October 17, 2012.

38. Prior to that point, Mr. Poierier made use of the amenity spaces and common areas in accordance with the applicable provisions of his lease agreement, which, as explained above, included the primary right to make use of certain amenity spaces for the benefit of the Vineyard Commons residents, and sometimes to the temporary and short-lived exclusion of other Vineyard Commons residents.

39. Upon the execution of the court's temporary restraining order on October 17, 2012, Mr. Poierier did not make any postings or schedule any special catering events without the advance permission of the Receiver. During the court conference that took place on October 17, 2012, the Receiver mentioned that Mr. Poierier had previously posted a note to the Vineyard Residents to the effect that the restaurant was making exclusive use of the amenity spaces and that the residents would have to obtain permission from him to make use of such spaces. Mr. Poierier completely denies this allegation, and although the Receiver stated that he had taken a photograph image of the alleged notice, he failed to produce it at the court conference and has failed to produce it after being requested to do so by Thomas F. Vasti, III, Esq. on the telephone on the evening of October 18,

12                                                                                      1.

2012, and again by letter, dated November 7, 2012. Annexed and attached hereto as **Exhibit "M"** is a copy of the aforesaid letter.

40. It was understood at the time the "Master Lease" agreement was being negotiated, and during the months following, that the restaurant would be entitled to a priority right to make use of the other amenity spaces in operating its restaurant business as a further benefit to the residents of Vineyard Commons. Such priority rights were set forth in the "Master Lease" agreement, and such priority rights help increase and sustain Mr. Poierier's restaurant business, all to the benefit of the Vineyard Commons residents.

41. It must be noted that the "Master Lease" agreement between Highland One, Inc. and Vineyard Commons Holdings, LLC has not been declared null and void by any court of law at this time.

42. Mr. Poierier was completely unaware of the fact that his landlord was in default of its mortgage payments, and he would have no means of obtaining that knowledge until he became unwittingly embroiled in the affairs of his landlord in the pending mortgage foreclosure action. Prior to that, he would have no reason to suspect that his landlord was in jeopardy of losing the property or his lease agreement was in jeopardy of being declared null and void. He had no interest in partaking in a scheme to defraud his landlord's creditors or the Mortgagee of the premises. His only interest was carrying out a restaurant business. The only reason that the Plaintiff has implicated Mr. Poierier in the alleged fraudulent scheme is because his lease agreement resembles the lease agreements used by Vineyard Commons Apartments, Inc. and Vineyard Commons Clubhouse, Inc., and because the terms of the lease seem, (without reflection beyond its surface), so unfavorable to the landlord and to the Mortgagee while being very favorable to the restaurant. However, as explained above, the unique and seemingly unfair terms of the lease were negotiated and agreed upon by the parties

13                                                                                          1.

for a very specific reason, and the parties had valid and full consideration for such terms. The Plaintiff's inference that Mark Poierier is a co-conspirator in this alleged scheme to defraud his landlord's creditors is wild, overreaching and speculative.

**WHEREFORE,** and by reason of the totality of the foregoing premises, your deponent respectfully requests that this honorable Court enter an Order granting the following relief:

(i) Requiring that the Receiver have a reasonable basis for denying the restaurant permission to hold special catering events for the residents of Vineyard Commons within the amenity and common spaces, and to provide a written explanation for its denial; and

(ii) Denying that portion of the Plaintiff's Order to Show Cause, (contained in item "6" thereof), which seeks to evict Highland One, Inc. from apartment "601" in contravention of its rights of Due Process and in contravention of the Lease Agreement, which has not, at this time, been declared null and void by any court of law.

Dated: Pleasant Valley, New York
       November 9, 2012

                                        Respectfully submitted,


                                        _____
                                        DAMON J. VELARDI, ESQ.
                                        VASTI & VASTI, P.C.
                                        Attorneys for
                                        HIGHLAND ONE, INC.
                                        1733 Main Street
                                        PO Box 656
                                        Pleasant Valley, NY 12569
                                        (845) 635-8866

14                                                                              1.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ULSTER

————————————————————————————

TNHYIF, INC.,

Plaintiff,

- against -

VINEYARD COMMONS HOLDINGS, LLC,
WORKERS' COMPENSATION BOARD OF THE
STATE OF NEW YORK, NEW YORK STATE
DEPARTMENT OF LABOR, VINEYARD
COMMONS CLUBHOUSE, INC. VINEYARD
COMMONS APARTMENTS, INC., and
"JOHN DOE NO. 1" through "JANE DOE NO. 12"
the last twelve names being fictitious and
unknown to Plaintiff, the person or parties
intended being tenants, occupants, persons
or corporations, if any, having or claiming
an interest in or lien upon the Premises,
described in the Complaint,

Defendant.

————————————————————————————

AFFIDAVIT IN OPPOSITION
TO PLAINTIFF'S ORDER TO SHOW
CAUSE AND TO PLAINTIFF'S
MOTION TO AMEND COMPLAINT

Index No.: 2012 / 3216

Assigned Judge:
Hon. Christopher E. Cahill, J.S.C.

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF DUTCHESS    )

MARK POIERIER, being duly sworn deposes and states the following:

1. I am the President of HIGHLAND ONE, INC., which at present is not a party in the above entitled

action.

2. I currently reside at 3033 Route 44/55, Gardiner, NY 12525.

3. I make this Affidavit in opposition to the following motions submitted to the Court in this action: (i)

the Plaintiff's Order to Show Cause, dated October 17, 2012, and returnable before the Court on

I

1.

November 16, 2012; and (ii) the Plaintiff's motion seeking leave to amend its Amended Complaint, pursuant to CPLR 3025(b), and returnable before the Court on November 16, 2012.

4. To be more specific, I make this Affidavit because the Plaintiff, TNHYIF, INC., by its Order to Show Cause, dated October 17, 2012, and within its proposed Second Amended Complaint, has most unjustly implicated me and my restaurant business as being part of a conspiracy to defraud the said Plaintiff in concert with the Defendants, VINEYARD COMMONS HOLDINGS, LLC, VINEYARD COMMONS APARTMENTS, INC. and VINEYARD COMMONS CLUBHOUSE, INC.

5. I deny this allegation. I have no interest nor desire to join with any persons or entities at the Vineyard Commons property to commit any illegal or unlawful act or to defraud the Plaintiff, TNHYIF, INC., which corporation I have never heard of prior to becoming embroiled in this foreclosure action. I am a restaurant owner and head chef for the Marco Polo Restaurant, which is the assumed name of HIGHLAND ONE, INC., a corporation I formed for the purpose of carrying on the Marco Polo Restaurant business at the Vineyard Commons property.

6. I began working as a Sous-Chef for the restaurant located on the Vineyard Property (which at the time was known as "Bistro at Vineyard Commons", and which would later become known as "Bistro 300") in or around June, 2010. Upon information and belief, the restaurant, at that time, was owned and operated by an entity known as JKS Management, and an individual by the name of Michael Barnett was, upon information and belief, a private restaurant investor. Michael Barnett is married to Denise Barnett who is an agent of Vineyard Commons Holdings, LLC, authorized to sign its leases, and who is the person who signed my lease on behalf of Vineyard Commons Holdings, LLC. The Head Chef of the restaurant was Chris Diesing, who was also my immediate supervisor.

7. In or around January, 2011, the restaurant was forced to lay off several of its employees, which, upon information and belief, was due to the fact that the restaurant was suffering financially, and

2

1.

members JKS Management essentially abandoned the restaurant and walked off the property. I was also laid off as Sous-Chef for the restaurant on or about January 26, 2011.

8.  I would later learn that the Head Chef resigned his position, as well, out of frustration with the changes that had occurred. On or about February 15, 2011, Michael Barnett contacted me and asked that I return to the restaurant to run it, as they had lost their head chef and apparently were having difficulty renting or selling the restaurant. Ultimately, I was not only to become the new Head Chef of the restaurant, but actually would purchase the restaurant's good will and equipment so as to become the official owner of the restaurant. I graciously accepted the offer.

9.  At that time, and in or about February, 2011, I was presented with a letter of intent from Denise Barnett of Vineyard Commons Holdings, LLC, which set forth certain requirements in anticipation of leasing the restaurant space at the Vineyard property, where my restaurant would operate. Annexed and attached hereto as **Exhibit "A"** is a copy of the aforesaid letter of intent. The letter of intent set forth specific regulations regarding the operations of the restaurant, and certain requirements involving advertising and offering the restaurant's services as an amenity to the residents of the Vineyard property. Denise Barnett and I signed the letter of intent on February 11, 2011.

10. For approximately nine months, I operated and managed the restaurant as head chef, prior to actually forming the corporation, Highland One, Inc.

11. On the advice of my accountant, Savvas Tsentides, who is located in Astoria, New York, I formed a corporation, which would become the actual owner of the Restaurant, called Highland One, Inc. Annexed and attached hereto as **Exhibit "B"** is a copy of the New York State Department of State computer printout, which shows that Highland One, Inc. was incorporated on November 18, 2011. I would eventually decide to name the restaurant "Marco Polo", and officially filed a certificate of

3

1.

assumed name on July 10, 2010. Annexed and attached hereto as **Exhibit "C"** is a copy of the certificate of assumed name filing receipt. I handled all of the corporation formation filings and certificate of assumed name myself with the assistance of my accountant. I was not assisted, and was not directed, by any agent or employee of Vineyard Commons Holdings, LLC with regard to the formation of my corporation, Highland One, Inc. During the time period after I first returned to the restaurant and began running it on my own, and worked towards incorporating and obtaining a liquor license for the restaurant, I incurred substantial expenses of my own to keep the restaurant afloat, which included, at times, having to pay my employees out of my own personal funds, and holding off on paying my own salary for weeks at a time in order to keep the doors of the restaurant open.

12. I also purchased the restaurant's equipment for $50,000.00 as a lump sum cash payment, from Michael Barnett. None of the restaurant equipment was ever owned by Vineyard Commons Holdings, LLC or was a part of the portion of the rental property constituting the restaurant space. Annexed and attached hereto as **Exhibit "D"** is a copy of the Bill of Sale of the restaurant equipment, which was signed by Michael Barnett.

13. In May, 2012, I negotiated the terms of the lease agreement between Highland One, Inc. and Vineyard Commons Holdings, LLC, with Michael Barnett, who is Denise Barnett's husband, with special attention being focused on the rental obligation and upon my ability to use the amenity spaces available to the tenants at the Vineyard Commons property in connection with the restaurant's services to the tenants.

14. As part of the lease negotiations, Mr. Barnett and I discussed the very serious issue of the limitation of prospective restaurant patrons, given the fact that the restaurant was to primarily offer its services as an amenity to the Vineyard property's residents and was located within the enclosed

4                                                                                              1.

and secluded Vineyard property, (not readily accessible or known to the general public). I was already aware of this limitation having worked at that location previously as a Sous-Chef. It was also my understanding, upon having conversations with members and employees of Vineyard Commons Holdings, LLC, that the local zoning ordinances of the Town of Lloyd forbid the restaurant from erecting a sign at the entrance of the Vineyard property by the main public highway where members of the general public could see that there was a restaurant located within the Vineyard Commons property. At the time my lease was negotiated and executed, many of the residential units at the Vineyard property were vacant and for that reason, the flow of prospective patrons of the restaurant was further limited at that time.

15. Due to the foregoing, it was contemplated and foreseen by both myself, Mr. Barnett and Vineyard Commons Holdings, LLC, that the restaurant would have much difficulty earning a profit, let alone earning enough funds to keep the restaurant operating and paying its employees. Accordingly, the monthly rental obligation under the lease agreement was agreed to be set at only $250.00 per month and Vineyard Commons Holdings, LLC would pay the restaurant a monthly subsidy in the sum of $3,000.00 while vacancies in the residential units remained, and $1,500.00 per month when at least 95% of the residential units were occupied by residents. The lease agreement was signed by myself and by Denise Barnett on May 31, 2012. Annexed and attached hereto as **Exhibit "E"** is a copy of the lease together with its Rider and its Exhibit "A", which contains a diagram of the property that is color coded to indicate the spaces leased to Highland One, Inc.

16. These terms were necessary in order to limit the restaurant's overhead expenses in view of the unique circumstances which limited its business from prospective restaurant patrons from the general public. I could not have kept the restaurant operating, pay myself, my employees and purchase the food and supplies if the rental obligation was any higher than as set forth in my lease

and if my landlord did not pay the restaurant its monthly subsidy. The monthly gross receipts of the restaurant are meager, and barely allow me to keep the restaurant afloat. Annexed and attached hereto as **Exhibit "F"**, are copies of the restaurant's weekly sales reports from August 12, 2012 to the present.

17. I have come to understand, based on my experience at the restaurant as a Sous-Chef and now as its Head Chef, and from conversations I have had with Vineyard Commons residents, (many of whom I have come to know well), that the existence of a restaurant on the Vineyard property as an amenity for the residents was a quite attractive selling point which ultimately helped Vineyard Commons Holdings, LLC attract residents at the property, and to build its real estate business. It also provided the most convenient and enjoyable amenity, among the other offered amenities, for the Vineyard residents, as they are all over the age of 55 years, and many are elderly and even disabled. Having a restaurant and bar within their immediate community and within their general residence location is highly convenient for the residents.

18. In connection with this foreclosure action, and in preparing my opposition to the Plaintiff's motions, I have downloaded and viewed Vineyard Commons website. A review of the website's homepage, shows that primary focuses amenities offered and luxurious lifestyle for its residents is place on the fact that there is a restaurant on the premises. As such, in advertising the unique and luxurious lifestyle that Vineyard Commons has to offer its residents, emphasis has been placed on the restaurant on the premises. Annexed and attached hereto as **Exhibit "G"** is a copy of the aforesaid webpage. In addition, Vineyard Commons Holdings, LLC runs a daily Craigslist advertisement seeking prospective tenants, which again places focus on the fact that there is a restaurant available to the residents right on the premises. Quoting the advertisement directly, Vineyard Commons

6

1.

Holdings, LLC states, "In fact enjoy eating at our Famous Bistro located on site for our residents." Annexed and attached hereto as **Exhibit "H"** is a copy of the aforesaid Craigslist advertisement.

19. I have reviewed the underlying Order to Show Cause papers submitted by the Vineyard Defendants, dated October 1, 2012, the responsive Order to Show Cause of the Plaintiff and the Plaintiff's motion seeking to amend the complaint, and I understand the nature of the alleged fraudulent scheme of which the Vineyard Defendants have been accused. I am astonished that the Plaintiff has implicated me and my restaurant in participating in, or being a part of, this fraudulent scheme.

20. I wish to make clear that the terms of my restaurant's lease with Vineyard Commons Holdings, LLC is not the "sweat heart" deal that the Plaintiff makes it out to be in paragraph "14" of the Plaintiff's attorney's affirmation. The very low monthly rental obligation and the subsidy to be paid by the landlord are necessary so that the restaurant can operate, given the fact that the restaurant is not readily available to, and known by, the general public, and the restaurant's patrons are very limited only to the residents of the Vineyard Commons property. As it turns out, the restaurant can, and has continued to, operate given its low overhead expenses, but it makes a very meager profit, as explained above. Without such a low rental obligation and monthly subsidy from the landlord, I am afraid the restaurant would have to close its doors, permanently.

21. In addition, I respectfully contend that the monthly subsidy of $3,000.00 or $1,500.00 from the landlord does not present a hardship for the landlord for the following reasons: Upon a review of the underlying Order to Show Cause submitted by the Vineyard Defendants, it appears that the residential units on the Vineyard Commons property produce rental income ranging from $1,550.00 to $2,100.00. While it is understood, based on the supporting papers contained in the Vineyard Defendants' Order to Show Cause, that my landlord obtains only $540.00 per month for seventy-one units, it is also my understanding that, upon information and belief, there are 185 units on the

7

1.

property. With 185 units on the property, the cost to the landlord to pay the $3,000.00 per month subsidy to Highland One, Inc. would only be $16.22 from each unit's monthly rental payments. Viewed in this manner, the Court can see that a $3,000.00 per month subsidy does not present a hardship to the landlord, and is not so grossly in favor of Highland One, Inc. and detrimental to Vineyard Commons Holdings, LLC as to render this provision in the lease unconscionable.

22. I have come to understand, after having reviewed the pending motions in this case, that the "Master Lease" agreement I signed with Vineyard Commons Holdings, LLC closely resembles the "Master Lease" agreement entered into by the Vineyard entities, and, as I stated above, I do understand the nature of the fraudulent allegations. However, I do not sub-lease my restaurant space to any other person or entity in order to make a rental profit. I simply rent the space, occupy it, and operate my restaurant at that location. This is my sole business endeavor and career in life, and I spend many many hours running this restaurant, often from 8:00 am to 10:00 pm in the evening.

23. Turning now to the content of paragraph "16" of Plaintiff's attorney's affirmation which states that my restaurant should be enjoined from excluding any residents and the Receiver from having full access to the theatre, community bathroom, lounges, lobbies or any other common space, I have never excluded residents from these amenity spaces, except for very temporary and short periods of time in accordance with my rights under the lease. My lease states that Highland One, Inc. has primary use, access and control over such amenity spaces. This, as explained above, is necessary not only to carry on the restaurant business, but also so that the Vineyard Commons residents can enjoy the benefits of the restaurant within these amenity spaces, which enhances their lifestyle, as intended and advertised by my landlord. Events catered by the restaurant are one of the primary means of business and income for the restaurant and one of the most convenient amenities for the

8

1.

residents. Seventy-five percent of these events are held for the residents at Vineyard Commons. Examples of some of such catering events within the amenity spaces are graduation ceremonies, baby showers, bridal showers, birthdays, wedding rehearsals dinners for relatives of the residents, wedding receptions, "dinner and a movie" events in the theatre space or sports events in the theatre space with "tailgate" food and alcoholic beverages. These catering events are advertised to the Vineyard Commons residents and attract many residents at a time, and provide for increased profit for my business, and some of the events are specifically scheduled and set up by specific residents, such as with the graduation ceremonies, baby showers, bridal showers, weddings, etc. These events, together with the restaurant's low overhead expenses, (thanks to the terms of the lease), are what keep my restaurant in business. In fact, upon review of Exhibit "F", one can see that baby shower catering event held on August 12, 2012, generated $1,755.72 in gross receipts which is approximately four times the typical receipts on a Sunday. A resident meeting that occurred on September 12, 2012 generated gross receipts in the sum of $930.50, which, again, is close to three or four times greater than the receipts on a typical Wednesday.

24. I have always posted notices to the residents well in advance of the date of these special events when an amenity space was going to be reserved for a specific event or for a specific resident, and such reservations have lasted no more than 6 or 7 hours at a time. My posted notice to the residents is usually posted one or two weeks in advance of the event.

25. After this Court issued its Temporary Restraining Order on October 17, 2012, I have posted no notices and made no reservations of any amenity spaces without first obtaining the permission from the Receiver, as advised by my attorney. I ask only that the Receiver be mindful of the fact that special catering events within the amenity spaces from time to time are an important and essential aspect of keeping the Marco Polo restaurant in business, and I ask that the Receiver be reasonable

9

1.

in granting or denying the restaurant permission to hold these events. For the last two weeks, I have been prevented from entering or making any use of the theatre amenity space, although I have faxed written requests to the Receiver. The Receiver has not responded. Annexed and attached hereto as **Exhibit "I"** are copies of my written requests.

26. I also wish to address the fact that I have been accused of taking affirmative steps to interfere with the Receiver's control of the property, especially as this accusation is claimed to be further evidence that I am a party to the Vineyard entities' conspiracy to defraud the Plaintiff.

27. In September, 2012, I received notice that I was required to cease paying my rent to Vineyard Commons Holdings, LLC, and to begin paying my rent to the Receiver, Andrew P. Zweben, Esq. Accordingly, my October, 2012 rental payment was paid directly to the Receiver, and I have annexed and attached hereto as **Exhibit "J"** a copy of said check. I have also paid my November, 2012 rent to the Receiver, and a copy of same has been annexed and attached hereto as **Exhibit "K"**. I did not personally meet the Receiver until October 10, 2012. On that date, I was at the restaurant preparing the lunch menu, when the Receiver and other individuals barged into my restaurant and demanded that I speak with them and turn over keys to Unit "601", and the audio-visual room, where I keep my internet, cable and credit card equipment for the restaurant as well as store other supplies for the restaurant, and threatened to hold me in contempt of court if I did not comply. Unit "601" is part of my leased space of which I have exclusive use as office space and restaurant storage, and also where I wash my linens, store catering tables, chairs and other equipments, as additional dry storage for the restaurant, where the restaurant's wifi signal comes from, which is used for the dining room music, and the restaurant's fax machine. As of the date of this affidavit, I have been unable to make use of this unit, and have had no access to the equipment currently stored therein, have been unable to use the restaurant's fax machine, or check on the wifi in case

10

1.

there is a problem with the internet, and have had to incur additional expense with washing linens, since I may no longer do so in apartment "601", and have had to purchase new equipment in order to replace certain items of equipment contained in apartment "601" to which I no longer have access. During the meeting with the Receiver, an individual by the name of Debra Reid stated that she had been entering Unit "601" for the past week without knowledge and consent. I had previously witnessed two men enter Unit "601" a week or mover before this meeting, and that is why on Sunday morning, September 30, 2012, I changed the locks for Unit "601" and the audio-visual room. I was confused by this intrusion, and my attorney has advised me that such intrusion may constitute illegal and actionable trespass. That afternoon, I contacted the law firm of Vasti & Vasti, P.C. and was advised to cooperate with the Receiver but that it was very possible that, if I was entitled to use the audio visual room and Unit "601" under my lease agreement, then it would a wrongful eviction without due process for the Receiver to exclude me from these locations. Later in the day on October 10, 2012, after my meeting with the Receiver, an individual came to the theatre room and changed the lock to the audio-visual room. The next day, with the assistance of a locksmith, I changed the lock to the audio-visual room so that I could regain access to protect my internet, cable and credit card equipment. This was primarily necessary so that I could have access to the credit card equipment which is essential for my business, as many of the restaurant patrons pay for their bill using a credit card. Prior to speaking to my attorney, I was also in fear that I was being wrongfully removed from my restaurant without the opportunity to be heard in court, and Highland One, Inc. is owner of all equipment in the restaurant, which cost $50,000.00. My attorney advised me that I could not be evicted without proper legal process, and my mind was set at ease.

28. At this time, I have been, and continue to be, very cooperative with the Receiver and I have complied with the Temporary Restraining Order issued by the Court on October 17, 2012.

11

1.

29. Prior to that point, I made use of the amenity spaces and common areas in accordance with the applicable provisions of my lease agreement, which, as explained above, included the primary right to make use of certain amenity spaces for the benefit of the Vineyard Commons residents, and sometimes to the temporary and short-lived exclusion of other Vineyard Commons residents so that certain special catering events could be held for all residents or for certain residents who had reserved the amenity spaces in conjunction with my restaurant.

30. Upon the execution of the court's temporary restraining order on October 17, 2012, I did not make any postings or schedule any special catering events without the advance permission of the Receiver. I have been advised by my attorney that, during the court conference that took place on October 17, 2012, the Receiver mentioned that I had previously posted a note to the Vineyard Residents to the effect that the restaurant was making permanent use of the amenity spaces to the exclusion of all residents and that the residents would have to obtain permission from me to make use of such spaces. I completely deny this allegation. I have never posted a notice that stated I, or my restaurant, had exclusive use of the amenity spaces for an indefinite period of time. All notices that I have ever posted, have stated that the restaurant would be making use of certain amenity spaces for a specific time period, and such notices stated the date and the times when the restaurant would be making use of the spaces. These notices were posted pursuant to my rights of priority use under the lease agreement. And I have always posted the notices well in advance of the date of the special events which would be held in the amenity spaces. Examples of some of the notices that I have used in the recent past are annexed and attached, collectively, as **Exhibit "L".**

31. At the time I signed my lease agreement in May, 2012, and during the months following, I was completely unaware of the fact that my landlord was in default of its mortgage payments, until I became aware of the current mortgage foreclosure action. I have never had any interest or reason

12                                                                                                  1.

to become involved in any scheme to defraud my landlord's creditors or the Mortgagee of the premises. My only interest has ever been to carry on my restaurant business quietly and peacefully.

32. As to the relief being demanded in the Plaintiff's Order to Show Cause, dated October 16, 2012, I realize that such demands for relief are primarily directed at the Vineyard entities. I do not take issue with the demands that Highland One, Inc. comply with the Order appointing Receiver or that Highland One, Inc. cease to interfere with the Receiver's right to use and control the common areas of the subject property. As stated above, I have complied with the Receiver's rights in this regard.

33. However, I must take issue with two aspects of the Plaintiff's Order to Show Cause. First, I ask that the Court be mindful of the fact that special catering events within the amenity and common spaces from time to time are an important and essential aspect of keeping the Marco Polo restaurant in business. Accordingly, I ask that the Court issue an Order requiring the Receiver to be reasonable in granting or denying the restaurant permission to hold these events, and if he should deny a specific request, to provide me with a written explanation which provides a reasonable basis for his denial of the restaurant's permission to hold such events within the amenity and common spaces of the property. I ask this of the Court because the Receiver has recently denied my use of the amenity spaces in connection with my restaurant business with no explanation or reasonable basis, as he has failed to respond to my written requests. I will continue to communicate with the Receiver to obtain his permission to hold such events in advance of the date of the proposed events. Second, the Rider of my lease agreement, at paragraph "6" states that I have exclusive use of apartment "601" and the adjoining office/storage space. Such space is necessary for the administration of my business, as I use same for office and storage space for the restaurant, and as a break room for employees and preparation of the restaurant linens. My lease agreement has not

13                                                                                           1.

been declared to be null and void by any court of law at the present time. Accordingly, I ask that the Court deny the Plaintiff's demand for relief within item "6" of the Order to Show Cause.

**WHEREFORE,** and by reason of the totality of the foregoing premises, your deponent respectfully requests that this honorable Court enter an Order granting the following relief:

(i) Requiring that the Receiver have a reasonable basis for denying the restaurant permission to hold special catering events for the residents of Vineyard Commons within the amenity and common spaces, and to provide a written explanation for its denial; and

(ii) Denying that portion of the Plaintiff's Order to Show Cause, (contained in item "6" thereof), which seeks to evict me from apartment "601" in contravention of my rights of Due Process and in contravention of the Lease Agreement, which has not, at this time, been declared null and void by any court of law.

MARK POIERIER

Sworn to before me this
9th day of November, 2012

Notary Public

JILLIAN C. FREESE
Notary Public. State of New York
No. 01FR6067877
Qualified in Dutchess County
Commission Expires December 17, 2013

14

1.

**G**



**CUDDY &**
**FEDER** ᴸᴸᴾ

445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
Tel 914.761.1300  Fax 914.761.5372
www.cuddyfeder.com

November 28, 2012

Via Facsimile – (212) 766-5899 & email – adam@ebsalaw.com
Adam Sattler, Esq.
Ebanks & Sattler , LLP
The New York Evening Post Building
20 Vesey Street, Suite 503
New York, New York 10007

Re: TNHYIF Inc. v. Vineyard Commons Holdings, LLC et al
    Index No. 12-3216 (N.D.N.Y. Docket No.: 1:12-cv-1692)

Dear Mr. Sattler:

Please be advised that Plaintiff, TNHYIF, Inc., ("Plaintiff") intends to file by Order to Show Cause a motion to remand and in connection therewith, will seek interim relief to allow the Supreme Court action to proceed while the remand motion is being decided. We will be filing our papers with the chambers of the Honorable Lawrence E. Kahn, United States District Judge, Northern District of New York, on November 29, 2012.

A copy of the proposed Order to Show Cause and all supporting papers will be sent to your office tonight via Federal Express overnight service.

Sincerely,

Joshua E. Kimerling

cc:    **BY EMAIL**

Robert D. Cook, Esq.
Cook, Netter, Cloonan, Kurtz & Murphy, P.C.
85 Main Street
P.O. Box 3939
Kingston, N.Y. 12402
(law@cookfirm.com)

Andrew Zweben, Esq., Receiver
12 John Street
Kingston, NY 12401
(azweben@csdsl.net)

Damon J. Velardi, Esq.
Vasti & Vasti, P.C.
1733 Main Street, Route 44
Pleasant Valley, NY 12569
(damon_velardi@vastilaw.com)

Robert A. Weis, Esq.
The Law Firm of William G. Sayegh
65 Gleneida Avenue
Carmel, NY 10512
(Weis@SayeghLaw.com)

C&F: 2039407.2

**ATTORNEYS AT LAW**   White Plains   Fishkill   New York City   Stamford

**Lipp, Troy**

| | |
|---|---|
| **From:** | Vitiello, Joann |
| **Sent:** | Wednesday, November 28, 2012 2:04 PM |
| **To:** | 'adam@ebsalaw.com' |
| **Cc:** | 'law@cookfirm.com'; 'azweben@csdsl.net'; 'damon_velardi@vastilaw.com'; 'weis@sayeghlaw.com'; Kimerling, Joshua; Lipp, Troy |
| **Subject:** | TNHYIF Inc. v. Vineyard Commons Holding, LLC et al. |
| **Attachments:** | AccuRouteBW-01.PDF |

The attached is sent on behalf of Joshua E. Kimerling, Esq.

**Joann Vitiello**
**Administrative Assistant**
CUDDY &
FEDER LLP
445 Hamilton Avenue-14th Floor
White Plains, NY 10601
(914) 761-1300 - Phone
(914) 761-5372 - Fax

1