UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

TNHYIF, INC.,

                                        Plaintiff,

        -against-

VINEYARD COMMONS HOLDINGS, LLC, WORKERS'
COMPENSATION BOARD OF THE STATE OF NEW
YORK, NEW YORK STATE DEPARTMENT OF LABOR,
VINEYARD COMMONS CLUBHOUSE, INC., VINEYARD
COMMONS APARTMENTS INC. and "JOHN DOE NO. 1"
through "JANE DOE NO. 12", the last twelve names being
fictitious and unknown to Plaintiff, the persons or parties
intended being tenants, occupants, persons or corporations, if
any, having or claiming an interest in or lien upon the Premises,
described in the Complaint,

                                        Defendants.

-----------------------------------------------------------X

U.S. DISTRICT COURT
**N.D. OF N.Y.**
**FILED**

NOV 2 9 2012

LAWRENCE K. BAERMAN, CLERK
ALBANY

**AFFIDAVIT IN SUPPORT**

Docket No.: 1: 12-cv-1692
Hon. Lawrence E. Kahn

STATE OF NEW YORK          )
                           )ss.:
COUNTY OF WESTCHESTER      )

        DESMOND McGOWAN, being duly sworn, deposes and says as follows:

        1.      I am the Chief Financial Officer of Plaintiff TNHYIF, Inc. ("Plaintiff") in

this action and submit this Affidavit based upon my personal knowledge of the facts set forth

herein. I am fully familiar with all facts and circumstances set forth herein.

        2.      As explained below, Plaintiff, while incorporated in Maryland, has its

entire operations, sole office, and the location of all directors in White Plains, New York. Further,

Plaintiff is authorized to do business in New York. A copy of the New York Department of State

Division of Corporations Entity Information printout for Plaintiff is annexed hereto as Exhibit A.

        3.      This Affidavit is respectfully submitted in support of Plaintiff's motion

seeking an Order: (a) remanding this action in its entirety to the Supreme Court of New York,

C&F: 2036196.5

1

County of Ulster; (b) awarding Plaintiff its costs incurred in this court by reason of such removal; (c) pursuant to Fed R. Civ. P. 11(c), imposing monetary sanctions upon Non-Party Movants and/or their attorneys; and (d) granting to Plaintiff such other, further and different relief as the Court may deem just and proper.

4.      This Motion, brought on by Order to Show Cause, also seeks interim relief to allow the State Court foreclosure proceeding to continue while Plaintiff's Motion to Remand is being decided by this Court.  In the absence of such interim relief, Plaintiff, which is owed approximately $46,000,000, and has not been paid the monthly payments due under the subject Loan (as defined below) since June, 2011, will be unfairly prejudiced and delayed from continuing to prosecute the State Court mortgage foreclosure proceeding.  No prejudice will result by allowing the State Court proceeding to continue during the pendency of this Motion.

## STATE COURT MORTGAGE FORECLOSURE PROCEEDINGS

5.      The above-entitled foreclosure proceeding was brought in the New York State Supreme Court, Ulster County, to foreclose a mortgage held by Plaintiff on premises known as 300 Vineyard Avenue, Town of Lloyd, County of Ulster and State of New York (the "Mortgaged Premises"), and was commenced by the filing of a Summons and Verified Complaint on September 12, 2012. The Verified Complaint was subsequently amended on September 24, 2012, a copy of which is annexed hereto as Exhibit B.

6.      As set forth in the Amended Verified Complaint, on or about July 2, 2009, Love Funding Corporation ("LFC"), as Lender, loaned to Vineyard Commons Holding, LLC ("Mortgagor" or "Defendant") the principal sum of $46,545,000.00 (the "Loan").

C&F: 2036196.5

2

7.      The Loan was evidenced and memorialized by a Mortgage Note dated July 2, 2009 (the "Note"), pursuant to which, Mortgagor promised to pay to LFC the principal sum of $46,545,000.00, with interest. A copy of the Note is annexed hereto as Exhibit C.

8.      For purposes of securing payment of the indebtedness of the Promissory Note, Mortgagor duly executed and delivered to LFC, a Mortgage (the "Mortgage"), dated as of July 2, 2009, wherein and whereby Mortgagor mortgaged to LFC the Mortgaged Premises. A copy of the Mortgage is annexed hereto as Exhibit D.

9.      The Mortgage constitutes a first lien upon the Mortgaged Premises, securing the principal sum of $46,545,000.00, plus interest, costs and fees.

10.      By Assignment of Mortgage dated February 17, 2012 (the "HUD Assignment"), between LFC, as assignor, and the Secretary of Housing and Urban Development of Washington D.C., his Successor and Assigns ("HUD"), as assignee, the Mortgage was duly assigned to HUD. A copy of the HUD Assignment, recorded in the Ulster County Clerk's Office on February 23, 2012 at Liber Book M, Volume 9904, Page 174, Instrument Number 2012-00002544, is annexed hereto as Exhibit E.

11.      By Assignment of Mortgage dated August 30, 2012 (the "Assignment"), between HUD, as assignor, and Plaintiff, as assignee, the Mortgage was further and duly assigned to Plaintiff. A copy of the Assignment, which was recorded in the Ulster County Clerk's Office on September 11, 2012, at Liber Book M, Volume 10086, Page 239, Instrument Number 2012-14175, is annexed hereto as Exhibit F.

12.      Based on the above, Plaintiff is the owner and holder of the Mortgage and Note.

C&F: 2036196.5

3

13.     Mortgagor was and is obligated under the Note to make payments in monthly installments of interest and principal in the sum of Two Hundred Seventy-Five Thousand Eight Hundred Twenty-Three and 51/100 Dollars ($275,823.51).

14.     Mortgagor has failed and refused to pay to LFC, HUD and now Plaintiff, as required by the Note and Mortgage, the monthly payment of principal and interest due thereunder for the months of June 1, 2011 through and including August 1, 2012, and did not remedy such failures, respectively, prior to the due date of the next installment of principal and interest then due and owing.

15.     Through July 31, 2012, there was and still is due, owing and unpaid to Plaintiff, under the Note and Mortgage, the principal amount of $45,942,564.00. Further, Mortgagor has made no payments under the Note subsequent to August 1, 2012.

16.     Based on the above, Mortgagor has failed and refused to comply with the terms and provisions of the Note and Mortgage as set forth above, and has materially breached and defaulted thereunder.

17.     On September 10, 2012, Plaintiff gave Mortgagor notice of its default, made written demand to Mortgagor for the payment of the entire balance due under the Note and Mortgage and declared said amount accelerated and due and owing.  A copy of this notice (the "Notice"), dated September 6, 2012, is annexed hereto as Exhibit G.

18.     Plaintiff thus elected to accelerate and call due the entire amount due under the Note and secured by the Mortgage.

19.     Based on the above, Mortgagor has failed and refused to comply with the terms and provisions of the Note and Mortgage as set forth above, and has materially breached and defaulted thereunder.

C&F. 2036196.5

20.     Mortgagor was served with a summons and Amended Verified Complaint via the New York State Secretary of State on October 5, 2012, as more fully described in the Affidavit of Service annexed hereto as Exhibit H.

21.     Pursuant to an Order of the Hon. Christopher E. Cahill (Supreme Court, Ulster County) dated September 13, 2012, a receiver of rents and profits was appointed to the Mortgaged Premises. (Copies of that Order and the Amended Order appointing Receiver are annexed hereto as Exhibit I.)

## PURPORTED REMOVAL

22.     On November 21, 2012, the Wednesday afternoon prior to the Thanksgiving holiday, counsel for Plaintiff received notice from the non-party movants, John O'Donnell, Maria Freitas and Spyros Panos ("Non-Party Movants"), that a notice of removal has been filed in the instant action.

23.     The three individuals who filed the Notice of Removal are not parties to the State Court action, are not signatories to any of the governing documents, and have never sought to appear or intervene in the State Court action. In short they are complete strangers to the State Court foreclosure proceeding.

24.     In their Notice of Removal, the three individuals claim to be named defendants "JOHN DOES 1, 2 and 3" and to be partners in both Vineyard Commons Holdings, LLC and its Managing Member, DDFM, LLC.

25.     JOHN DOES 1, 2 and 3 in the instant action are named for the purpose of foreclosing the interest of any unknown entity having a subordinate lien against the Mortgaged Premises. The Non-Party Movants' status, as minority partners, if such be the case, does not make the Non-Party Movants a party to the action. Non-Party Movants have further claimed that they are

C&F: 2036196.5

5

entitled to remove this action based on the fact that the United States government may be named as a third-party defendant. In fact, that United States is not a party to this action. Further, upon information and belief, one of the Non-Party Movants, John O'Donnell, may have previously commenced one or more proceedings to have the managing member of Defendant Vineyard Commons Holdings, LLC, removed and replaced, none of which actions were successful.

26.     I have been advised by counsel that removal in this action is wholly improper for a whole host of reasons, including an obvious lack of diversity of citizenship, the removal is untimely given the fact that the pleadings in the State Court action were served in excess of thirty days prior to the removal filing, the Non-Party Movants have never appeared in the action and would have no right or standing to do so, and the United States is not a party to this action and the allegation that the United States may be named as a third-party defendant does not support removal.

## PLAINTIFF'S PRINCIPAL PLACE OF BUSINESS

27.     Counsel has specifically advised that the law requires that, in connection with an action for removal based upon diversity of citizenship, that a corporation is deemed to be a citizen of both its state of incorporation as well as its principal place of business.

28.     Plaintiff's principal place of business is located at 44 South Broadway, 10th Floor, White Plains, New York 10601( the "White Plains Office").

29.     The White Plains Office is the corporate headquarters of Plaintiff and the office from which Plaintiff transacts all business, including business associated with the instant mortgage foreclosure action.

C&F: 2036196.5

30.     All of Plaintiff's corporate officers are located and work in White Plains, New York, where they each participate in maintaining and controlling Plaintiff's business activities.

31.     All of Plaintiff's mail is sent to the White Plains Office.

32.     The White Plains Office is the only office maintained by Plaintiff and it is the sole "nerve center" of Plaintiff's existence.

33.     Finally, again, Plaintiff is authorized to do business in New York.

34.     No prior application for the relief requested herein has been made to this or any other Court.

WHEREFORE, it is respectfully requested that Plaintiff's Motion to Remand and related interim relief be granted in its entirety, together with such other, further and different relief as the Court may deem just and proper.

_____
DESMOND McGOWAN

Sworn to before me this
28ᵗʰ day of November, 2012

NICOLE CHAPINS
Notary Public, State of New York
Registration #01CH6262475
Qualified in Westchester County
Commission Expires December 5, 2015

7

C&F: 2036196.5

**A**

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through November 26, 2012.

Selected Entity Name:

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | TNHYIF INC. |
| **DOS ID #:** | 4287622 |
| **Initial DOS Filing Date:** | AUGUST 24, 2012 |
| **County:** | WESTCHESTER |
| **Jurisdiction:** | MARYLAND |
| **Entity Type:** | FOREIGN BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

CAPITOL SERVICES, INC.
1218 CENTRAL AVENUE
SUITE 100
ALBANY, NEW YORK, 12205

**Registered Agent**

NONE

This office does not record information regarding
the names and addresses of officers, shareholders or
directors of nonprofessional corporations except the
chief executive officer, if provided, which would be
listed above. Professional corporations must include
the name(s) and address(es) of the initial officers,
directors, and shareholders in the initial certificate
of incorporation, however this information is not
recorded and only available by viewing the
certificate.

**\*Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|

No Information Available

*Stock information is applicable to domestic business corporations.

**Name History**

| Filing Date | Name Type | Entity Name |
|---|---|---|
| AUG 24, 2012 | Actual | TNHYIF INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results                          New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS Homepage  |  Contact Us

**B**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ULSTER
----------------------------------------------------------------X
TNHYIF, INC.,

                                        Plaintiff,

    -against-

VINEYARD COMMONS HOLDINGS, LLC,
WORKERS' COMPENSATION BOARD OF THE
STATE OF NEW YORK, NEW YORK STATE
DEPARTMENT OF LABOR, VINEYARD COMMONS
CLUBHOUSE, INC., VINEYARD COMMONS
APARTMENTS INC., and "JOHN DOE NO. 1" through
"JANE DOE NO. 12", the last twelve names being
fictitious and unknown to Plaintiff, the persons or parties
intended being tenants, occupants, persons or
corporations, if any, having or claiming an interest in or
lien upon the Premises, described in the Complaint,
                                        Defendants.

----------------------------------------------------------------X

**AMENDED**
**VERIFIED**
**COMPLAINT**

Index No.: 12-3216

Filed: 9/12/12

        Plaintiff TNHYIF, INC. ("Plaintiff"), by its attorneys, CUDDY & FEDER LLP, as

and for its Amended Verified Complaint herein, respectfully alleges as follows:

                                **THE PARTIES**

        1.      Plaintiff is a Maryland corporation authorized to transact business in the State

of New York and maintains a place of business at 44 South Broadway, 10th Floor, White

Plains, New York 10601.

        2.      Upon information and belief, Defendant VINEYARD COMMONS

HOLDINGS, LLC. ("Mortgagor" or "Defendant") is a limited liability company organized

and existing under and pursuant to the laws of the State of New York, having a principal

place of business located at 642 Merlot Drive, Highland, New York 12528.

3. Upon information and belief, Defendant WORKERS' COMPENSATION BOARD OF THE STATE OF NEW YORK ("WCB") is a department or agency of the State of New York, with an office located at 20 Park Street, Albany, NY 12207, and which may have or claim to have an interest in or lien upon the Mortgaged Premises (as hereinafter defined) that is subsequent and subordinate to the Mortgage (as defined below) sought to be foreclosed herein.

4. Upon information and belief, Defendant NEW YORK STATE DEPARTMENT OF LABOR ("DOL") is a department or agency of the State of New York, with an office located at Building 12, W.A. Harriman Campus, Albany, New York 12240, and which may have or claim to have an interest in or lien upon the Mortgaged Premises (as hereinafter defined) that is subsequent and subordinate to the Mortgage (as defined below) sought to be foreclosed herein.

5. Upon information and belief, Defendant VINEYARD COMMONS CLUBHOUSE, INC. ("Clubhouse") is a corporation organized and existing under and pursuant to the laws of the State of New York, having a principal place of business located at 6 Merlot Drive, Highland, New York 12528, and which may have or claim to have a leasehold interest upon the Mortgaged Premises (as hereinafter defined) that is subsequent or subordinate to the Mortgage (as defined below) sought to be foreclosed herein.

6. Upon information and belief, Defendant VINEYARD COMMONS APARTMENTS INC. ("VCA") is a corporation organized and existing under and pursuant to the laws of the State of New York, having a principal place of business located at 6 Merlot Drive, Highland, New York 12528.

C&F: 1998108.1

7.    Upon information and belief, "JOHN DOE NO. 1" through "JANE DOE NO. 12" are fictitious and unknown, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the Mortgaged Premises as described hereinbelow.

## FIRST CAUSE OF ACTION

8.    Plaintiff repeats and realleges each and every allegation mentioned and set forth above as if set forth verbatim herein.

9.    On or about the July 2, 2009, Love Funding Corporation ("LFC"), as Lender, loaned to Mortgagor the principal sum of $46,545,000.00 (the "Loan").

10.    The Loan was evidenced and memorialized by a Mortgage Note dated July 2, 2009 (the "Note"), pursuant to which, Mortgagor promised to pay to LFC the principal sum of $46,545,000.00, with interest. A copy of the Note is annexed hereto as Exhibit A.

11.    For purposes of securing payment of the indebtedness of the Promissory Note, Mortgagor duly executed and delivered to LFC, a Mortgage (the "Mortgage"), dated as of July 2, 2009, wherein and whereby Mortgagor mortgaged to LFC certain real property (the "Mortgaged Premises") commonly known as 300 Vineyard Avenue, Town of Lloyd, County of Ulster and State of New York, and also known as Section 95.2, Block 6, Lots 2 and 36 on the Tax Map of the Town of Lloyd, and more particularly described in Schedule A to the Mortgage. A copy of the Mortgage is annexed hereto as Exhibit B.

12.    The Mortgage was duly recorded in the Office of the Clerk of the County of Ulster on August 3, 2009 at Liber Book M, Volume 9178, Page 58, Instrument Number 2009-00012292, and all taxes and fees were duly paid.

C&F: 1998108.1

13.    The Mortgage constitutes a first lien upon the Mortgaged Premises, securing the principal sum of $46,545,000.00, plus interest, costs and fees.

14.    By Assignment of Mortgage dated February 17, 2012 (the "HUD Assignment"), between LFC, as assignor, and the Secretary of Housing and Urban Development of Washington D.C., his Successor and Assigns ("HUD"), as assignee, the Mortgage was duly assigned to HUD. A copy of the HUD Assignment, recorded in the Ulster County Clerk's Office on February 23, 2012 at Liber Book M, Volume 9904, Page 174, Instrument Number 2012-00002544, is annexed hereto as Exhibit C.

15.    LFC also executed an Allonge to Mortgage Note dated February 17, 2012 (the "HUD Allonge"), which provided as follows:

> THIS IS AN ALLONGE to the Mortgage Note dated July 2, 2009, made by Vineyard Commons Holdings, LLC, a New York limited liability company to LFC, a Virginia corporation, in the original principal amount of Forty Six Million Five Hundred Forty Five Thousand and no/100 Dollars ($46,545,000.00).
>
> For value received, all right, title and interest of the undersigned to the within Mortgage Note, the unpaid balance of which is <u>Forty Five Million Nine Hundred Forty Two Thousand Five Hundred Sixty Four and no/100 Dollars ($45,942,564.00)</u>, together with the interest thereon, are hereby assigned to the Secretary of Housing and Urban Development of Washington, D.C., his successors and assigns, without recourse or warranty except as shown in that certain assignment of even date assigning to said Secretary the Mortgage securing this Note.

A copy of the HUD Allonge is annexed hereto as Exhibit D (emphasis in original).

16.    By Assignment of Mortgage dated August 30, 2012 (the "Assignment"), between HUD, as assignor, and Plaintiff, as assignee, the Mortgage was further and duly assigned to Plaintiff. A copy of the Assignment, which was recorded in the Ulster County Clerk's Office on September 11, 2012, at Liber Book M, Volume 10086, Page 239, Instrument Number 2012-14175, is annexed hereto as Exhibit E.

4

C&F 1998108 1

17.    In addition, HUD executed a Note Endorsement dated August 30, 2012 (the "Note Endorsement"), which provides as follows:

> ENDORSEMENT OF Mortgage Note dated July 2, 2009 including any assignments thereto and modifications thereof (the "Note")
>
> FROM: SECRETARY OF HOUSING AND URBAN DEVELOPMENT OF WASHINGTON, D.C. ("HUD")
>
> Pay to the order of TNHYIF, Inc. ("Assignee"), without recourse.
>
> HUD and Assignee expressly acknowledge and agree that from and after the date of this Endorsement, no FHA Mortgage Insurance is in effect with respect to the Note, that the panel evidencing FHA Mortgage Insurance on the Note has been or shall be deemed to be marked with an "X" across it and that the Note (including any assignments thereto and modifications thereof) has been or shall be deemed to be marked with the words "FHA Mortgage Insurance Terminated.    Note Endorsement From HUD Hereby Made A Part Hereof."
>
> **IN WITNESS WHEREOF**, HUD has caused this Endorsement to be executed and delivered under seal by its duly authorized agent as of the 30th day of August, 2012.

A copy of the Note Endorsement is annexed hereto as Exhibit F.

18.    Based on the above, Plaintiff is the owner and holder of the Mortgage and Note.

19.    Paragraph 1 of the Mortgage provides that "Mortgagor will pay the Note at all times and in the manner provided therein." Exhibit B.

20.    In addition, Paragraphs 5 and 25 of the Mortgage provide, in pertinent part, as follows:

> Paragraph 5: "That upon default hereunder Mortgagee shall be entitled to the appointment of a receiver by any court having jurisdiction, without notice, to take possession and protect the

5

C&F: 1998108.1

property described herein and operate same and collect the rents, profits and income therefrom."

Paragraph 25: "That the whole of the said principal sum of any other sums of money accrued by this Mortgage shall, forthwith or thereafter, at the option of the Mortgagee, become due and payable upon the happening of either of the following events, irrespective of whether or not the same be remedied by the Mortgagee:

(a) Failure to make any monthly payment provided for herein or in the Note secured hereby prior to the date of the next such installment..."

Exhibit B.

21.      Mortgagor was and is obligated under the Note to make payments of principal

and interest due thereunder as follows:

FOR VALUE RECEIVED, the undersigned, VINEYARD COMMONS HOLDINGS, LLC, a limited liability company organized and existing under the laws of the state of new York promises to pay to LFC, a corporation, organized and existing under the laws of Virginia, or order, the principal sum of FORTY-SIX MILLION FIVE HUNDRED FORTY-FIVE THOUSAND and 00/100[th] DOLLARS ($46,545,000.00) with interest from date at the rate of Six and Six-tenths percent (6.6%) per annum on the unpaid balance until paid. The said principal and interest shall be payable in monthly installments as follows:

Interest alone on such amount of principal as may be advanced from time to time, computed from the date of each such advance, shall be due and payable monthly commencing on August 1, 2009 through May 1, 2011. Thereafter, commencing on June 1, 2011, monthly installments of interest and principal shall be due and payable in the sum of Two Hundred Seventy-Five Thousand Eight Hundred Twenty-Three and 51/100 Dollars ($275,823.51) each, such payments to continue monthly thereafter on the first day of each succeeding month until the entire indebtedness has been paid in full. In any event, the balance of principal (if any) remaining unpaid, plus accrued interest, shall be due and payable May 1, 2051.

C&F 1998108.1

> The installments of principal and interest shall be applied first to interest at the applicable rate aforesaid upon the principal sum or so much thereof as shall from time to time remain unpaid, and the balance thereof shall be applied on account of principal.

Exhbiit A (emphasis in original).

22.    The Note further provides that:

> The whole of the principal sum or any part thereof, and of any other sums of money secured by the Mortgage given to secure this Note, shall forthwith, or thereafter, at the option of the Mortgagee, become due and payable if default be made in the payment of any installment under this Note and if such default is not made good prior to the due date of the next such installment under this Note and if such default is not made good prior to the due date of the next such installment or upon the happening of any default which, by the terms of the Mortgage given to secure this Note, shall entitle the Mortgagee to declare the same, or any part thereof, to be due and payable; all the covenants, agreements, terms and conditions of said Mortgage and of the Building Loan Agreement incorporated in the Mortgage (to the extent said Building Loan Agreement is not inconsistent with the terms of this Note and the said Mortgage) are hereby incorporated herein by reference to the same extent and effect as if fully set forth and made a part of this Note; and the undersigned hereby covenants to perform all such covenants and agreements. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. In the event of default in the payment of this Note, and if the same is collected by an attorney at law, the undersigned hereby agree(s) to pay all costs of collection, including a reasonable attorney's fee.

Exhibit A.

23.    Mortgagor has failed and refused to pay to LFC, HUD and now Plaintiff, as required by the Note and Mortgage, the monthly payment of principal and interest due thereunder, in the amount of $275,823.51 each month, for the months of June 1, 2011

7

through and including August 1, 2012, and did not remedy such failures, respectively, prior to the due date of the next installment of principal and interest then due and owing.

24.     Through July 31, 2012, there was and still is due, owing and unpaid to Plaintiff, under the Note and Mortgage, the principal amount of $45,942,564.00.

25.     Based on the above, Mortgagor has failed and refused to comply with the terms and provisions of the Note and Mortgage as set forth above, and has materially breached and defaulted thereunder.

26.     On September 10, 2012, Plaintiff gave Mortgagor notice of its default, made written demand to Mortgagor for the payment of the entire balance due under the Note and Mortgage and declared said amount accelerated and due and owing.  A copy of this notice (the "Notice"), dated September 6, 2012, is annexed hereto as Exhibit G.

27.     Plaintiff thus elected to accelerate and call due the entire amount due under the Note and secured by the Mortgage.

28.     Mortgagor has since failed and refused to pay the entire balance due under the Note and Mortgage as required.

29.     Each of the above-named Defendants other than Mortgagor has or may claim to have some interest or lien upon the Mortgaged Premises, or some part thereof, which interest or lien, if any, has accrued subsequent to and is subordinate and subject to the lien of the Mortgage.

30.     Upon information and belief, WCB may have a subordinate interest in the Mortgaged Premises based upon a Judgment dated and filed on June 12, 2012.

31.     Upon information and belief, DOL may have a subordinate interest in the Mortgaged Premises based upon a Judgment dated and filed on June 11, 2012.

C&F: 1998108.1

32.   Upon information and belief, Clubhouse may have a subordinate interest in the Mortgaged Premises pursuant to a written or oral lease.

33.   Upon information and belief, Clubhouse is operating a restaurant and bar at the Mortgaged Premises known as Bistro 300 or Bistro at Vineyard Commons.

34.   Upon information and belief, Clubhouse and/or VCA may be collecting rents from tenants at the Project and diverting such rents for the benefit of the principals of Clubhouse and/or VCA as opposed to using such rents to pay the expenses of the Mortgaged Premises, such as real estate taxes and debt service due and owing on the Loan.

35.   No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of the Mortgage or for the recovery of the said sum secured by the Mortgage, or any part thereof.

36.   Plaintiff requests that in the event that this action will proceed to Judgment of Foreclosure and Sale, the Mortgaged Premises should be sold subject to the following:

   a.   Any state of facts that an inspection of the Mortgaged Premises would disclose.

   b.   Any state of facts that an accurate survey of the Mortgaged Premises would disclose.

   c.   Covenants, restrictions, easements and public utility agreements of record, if any.

   d.   Building and zoning ordinances of the municipality in which the Mortgaged Premises are located and possible violations of same.

   e.   Unpaid taxes and assessments, if any.

   f.   Any rights of tenants or persons in possession of the subject Mortgaged Premises, with the exception of any rights of Clubhouse or any individual or entity claiming any rights under Clubhouse, which the Mortgage Premises is to be sold free and clear thereof.

   g.   Any equity of redemption of the United States of America to redeem the Mortgaged Premises within 120 days from the date of sale.

C&F: 1998108.1

h.   A covenant requiring any purchaser to comply with the regulations regarding nondiscrimination in admitting certificate and voucher holders (as set forth in 24 C.F.R. § 290.39).

i.   Prior liens of record, if any.

37.   In the event that Plaintiff possesses any other liens against said Mortgaged Premises either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other liens shall not be merged in Plaintiff's cause of action set forth in this Complaint, but that Plaintiff shall be permitted to enforce said other liens and/or seek determination of priority thereof in an independent action or proceeding, including without limitation, any surplus money proceedings.

38.   The Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein on the part of Mortgagor, and such election shall continue and remain effective.

**WHEREFORE**, the Plaintiff demands judgment that the Defendants and each of them and all persons claiming under them or any of them, subsequent to the commencement of this action and the filing of a Notice of Pendency thereof, be barred and foreclosed of and from all estate, right, title, interest, claim, lien and equity of redemption of, in and to the said Mortgaged Premises and each and every part and parcel thereof; that the said Premises may be decreed to be sold, according to law, in "as is" physical order and condition, subject to the items set forth in Paragraph 36 of this Complaint; that the monies arising from the sale thereof may be brought into Court; that the Plaintiff may be paid the amount due on the Note and Mortgage as hereinbefore set forth, with interest and late charges to the time of such payments and the expenses of such sale, plus reasonable attorneys' fees, together with the costs, allowances and disbursements of this action, and together with any sums incurred by

10

Plaintiff pursuant to any terms or provision of the Note and Mortgage set forth in this Complaint, or to protect the lien of Plaintiff's Mortgage, together with interest upon said sums from the dates of the respective payments and advances thereof, so far as the amount of such monies properly applicable thereto will pay the same; that this Court forthwith appoint a Receiver of the rents and profits of said Premises, during the pendency of this action with the usual powers and duties; and that the Mortgagor may be adjudged to pay the whole residue, or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after a sale of the Mortgaged Premises and the application of the proceeds pursuant to the directions contained in such Judgment, and that in the event that Plaintiff possesses any other liens against said Mortgaged Premises either by way of Judgment, junior mortgage or otherwise, Plaintiff requests that such other liens shall not be merged in Plaintiff's cause of action set forth in this Complaint, but that Plaintiff shall be permitted to enforce said other liens and/or seek determination of priority thereof in any independent actions or proceedings, including, without limitation, any surplus money proceeding, and that the Plaintiff may have such other and further relief, or both in the Premises, as may be just and equitable.

Dated:     White Plains, New York
           September 24, 2012

                            **CUDDY & FEDER LLP**
                            *Attorneys for Plaintiff*
                            445 Hamilton Avenue-14th Floor
                            White Plains, NY 10601
                            (914) 761-1300

                            By: _____
                                Joshua E. Kimerling
                                Thomas A. Cunnane, Jr.

C&F: 1998108.1

**VERIFICATION**

STATE OF NEW YORK        )
                             ) ss.:

COUNTY OF WESTCHESTER   )

       DESMOND McGOWAN, being duly sworn, deposes and says:

       I am the Chief Financial Officer of Plaintiff TNHYIF, Inc.; I have read the annexed Amended Verified Complaint, know the contents thereof and the same are true to my knowledge, except as to those matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true based on the books and records of Plaintiff.

                                                  Desmond McGowan

Sworn to before me this
___ day of September, 2012

Notary Public
       TAMI J. ESCOBAR
     Notary Public, State of New York
        No. 01ES6067372
     Qualified in Rockland County
   Commission Expires Dec. 10, 20_3_

C&F: 1998108.1

**C**

FHA FORM 4159-A
(CORPORATE)
Rev. March 1972

## MORTGAGE NOTE

$46,545,000.00

New York, New York
July 2, 2009

FOR VALUE RECEIVED, the undersigned, VINEYARD COMMONS HOLDINGS, LLC, a limited liability company organized and existing under the laws of the state of New York promises to pay to LOVE FUNDING CORPORATION, a corporation organized and existing under the laws of Virginia, or order, the principal sum of FORTY-SIX MILLION FIVE HUNDRED FORTY-FIVE THOUSAND and 00/100ths Dollars ($46,545,000.00) with interest from date at the rate of Six and Six-Tenths per centum (6.6%) per annum on the unpaid balance until paid. The said principal and interest shall be payable in monthly installments as follows:

Interest alone on such amount of principal as may be advanced from time to time, computed from the date of each such advance, shall be due and payable monthly commencing on August 1, 2009 through May 1, 2011. Thereafter, commencing on June 1, 2011, monthly installments of interest and principal shall be due and payable in the sum of Two Hundred Seventy-Five Thousand Eight Hundred Twenty-Three and 51/100ths Dollars ($275,823.51) each, such payments to continue monthly thereafter on the first day of each succeeding month until the entire indebtedness has been paid in full. In any event, the balance of principal (if any) remaining unpaid, plus accrued interest, shall be due and payable May 1, 2051. The installments of principal and interest shall be applied first to interest at the applicable rate aforesaid upon the principal sum or so much thereof as shall from time to time remain unpaid, and the balance thereof shall be applied on account of principal.

Both principal and interest under this Note, as well as the additional payments set forth in the mortgage shall be payable at the office of Love Funding Corporation, 1250 Connecticut Avenue, NW, Suite 550, Washington, D.C. 20036 or such other place as the holder may designate in writing.

Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly pay-ments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder. If this debt is paid in full prior to maturity and while insured under the National Housing Act, all parties liable for payment of this debt hereby agree to be jointly and severally bound to pay to the holder hereof any adjusted premium charge required by the applicable Regulations.

Notwithstanding any provision herein for a prepayment charge, such charge shall be applicable only to the amount of prepayment in any one calendar year which is in excess of fifteen per centum (15%) of the original principal sum of this Note.

In the event any installment or part of any installment due hereunder becomes delinquent for more than fifteen (15) days, there shall be due, at the option of the holder, in addition to other sums due hereunder, a sum equal to two percent (2%) of the amount of such installment (including principal and interest) so delinquent. Whenever under the law of the jurisdiction where the property is located, the amount of any such late charge is considered to be additional interest, this provision shall not be effective if the rate of interest specified in this Note, together with the amount of the late charge, would aggregate an amount in excess of the maximum rate of interest permitted and would constitute usury.

The whole of the principal sum or any part thereof, and of any other sums of money secured by the Mortgage given to secure this Note, shall, forthwith, or thereafter, at the option of the holder of the Mortgage, be-come due and payable if default be made in the payment of any installment under this Note and if such default is not made good prior to the due date of the next such installment or upon the happening of any default which, by the terms of the Mortgage given to secure this Note, shall entitle the Mortgagee to declare the same, or any part thereof, to be due and payable; all the covenants, agreements, terms, and conditions of said Mortgage and of the Building Loan Agreement incorporated in the Mortgage (to the extent said Building Loan Agreement is not inconsistent with the terms of this Note and the said Mort-gage) are hereby incorporated herein by reference to the same extent and effect as if fully set forth and made a part of this Note; and the undersigned hereby covenants to perform all such covenants and agreements. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. In the event of default in the payment of this Note, and if the same is collected by an attorney at law, the undersigned hereby agree(s) to pay all costs of collection, including a reasonable attorney's fee.

*NOTE: Words in italics or stricken indicate additions or modifications to FHA Form 4159-A*

ND: 4519-5560-6786, v. 1

~~No default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made pursuant to the privilege of prepayment set forth in this Note equals or exceeds the amount of such required installment of principal.~~

All parties to this Note, whether principal, surety, guarantor, or endorser, hereby waive presentment for payment, demand, protest, notice of protest, and notice of dishonor.

Notwithstanding any other provision contained in this Note, it is agreed that the execution of this Note shall impose no personal liability on the maker hereof for payment of the indebtedness evidenced hereby and in the event of a default, the holder of this Note shall look solely to the property described in the Mortgage and to the rents, issues and profits therefore in satisfaction of the indebtedness evidenced hereby and will not seek or obtain any deficiency or personal judgment against the maker hereof except such judgment or decree as may be necessary to foreclose and bar its interest in the property and all other property mortgaged pledged, conveyed or assigned to secure payment of this Note except as set out in the Mortgage of even date given to secure this indebtedness.

Signed and sealed the day and year first above written.

**Vineyard Commons Holdings, LLC**
a New York limited liability company

BY: DDFM, LLC, Managing Member

By: _Denise Barnett_
Denise Barnett, Manager

THIS IS TO CERTIFY that this is the Note described in, and secured by, Mortgage of even date herewith, and in the same principal amount as herein stated, on property located at Vineyard Avenue, in the City of Lloyd, County of Ulster, State of New York.

Dated this _1st_ day of July, 2009                    _[signature]_
                                                                    Notary Public

IVETTE E. SANTIAGO
Notary Public, State of New York
No. 01-4802301
Qualified in New York County
Commission Expires Nov. 30, 2010

ALLONGE #1
TO
MORTGAGE NOTE
OF
VINEYARD COMMONS HOLDINGS, LLC
TO
LOVE FUNDING CORPORATION

Dated: July 2, 2009

1.   This Allonge #1 to Mortgage Note (this "Allonge") is attached to and made a part of the Mortgage Note from Vineyard Commons Holdings, LLC dated as of the date hereof (the "Note").

1.   2.   Prepayment:

(a)   Maker shall not have the right to prepay the indebtedness evidenced hereby in whole or in part at any time prior to June 1, 2014. Maker shall have the right, on or after June 1, 2014, to prepay the indebtedness evidenced hereby in whole or in part on the last day of any calendar month after such date during the term hereof, upon at least thirty (30) days prior written notice to the holder of this Note, which notice shall specify the date on which the prepayment is to be made, the principal amount of such prepayment and the total amount to be paid. In the event of any prepayment of principal at any time on or after June 1, 2014, the Maker shall concurrently pay to the holder of this Note a prepayment premium equal to the following designated percentages of the amount of principal of this Note to be so prepaid with respect to any prepayment which occurs during the following indicated time periods:

| Time of Prepayment | Prepayment Premium |
|---|---|
| June 1, 2014 through May 31, 2015 | 7% |
| June 1, 2015 through May 31, 2016 | 6% |
| June 1, 2016 through May 31, 2017 | 5% |
| June 1, 2017 through May 31, 2018 | 4% |
| June 1, 2018 through May 31, 2019 | 3% |
| June 1, 2019 through May 31, 2020 | 2% |
| June 1, 2020 through May 31, 2021 | 1% |
| June 1, 2021 and thereafter | 0% |

Notwithstanding any partial prepayment of principal made pursuant to the privilege of prepayment set forth in this Note, the Maker shall not be relieved of its obligations to make scheduled monthly installments of principal and interest as and when such payments are due and payable under this Note.

(b)   Notwithstanding any prepayment prohibition imposed and/or premium required by this Note with respect to prepayments made prior to June 1, 2020, the indebtedness evidenced by this Note may be prepaid in whole or in part without the consent of the holder of this Note and without prepayment premium if the Federal Housing Commissioner (the "Commissioner") determines that prepayment will avoid a mortgage insurance claim and is therefore in the best interests of the Federal Government.

(c)   Notwithstanding the provisions of Paragraph 1(a) above, the provisions of Paragraph 1(a) shall not apply, and no prepayment premium shall be collected by the holder of this Note, with respect to any prepayment which is made by or on behalf of the Maker from insurance proceeds as a result of damage to the mortgaged premises or condemnation awards which, at the option of the holder of this Note, may be applied to reduce the indebtedness of Maker evidenced hereby pursuant to the terms of the Mortgage of even date given by Maker to the holder of this Note to secure said indebtedness.

ND: 4519-5560-6786, v. 1

Any prepayment made pursuant to this Paragraph 1(c) shall be deemed to have been made on the last day of the month in which such payment is received by holder.

(d)   Notwithstanding the provisions of Paragraph 1(a) above, the provisions of Paragraph 1(a) shall not apply, and no prepayment premium shall be collected by the holder of this Note, with respect to a reduction in the principal amount of this Note (or a partial prepayment) required by the Commissioner at the time of Final Endorsement as a result of the Commissioner's cost certification requirements. Any prepayment made pursuant to this Paragraph 1(d) shall be deemed to have been made on the last day of the month in which such payment is received by holder. If a reduction (or partial prepayment) is required by the Commissioner, the remaining payments due on this Note may be recast, with the approval of the Holder and the Commissioner, into equal monthly payments of principal and interest sufficient to amortize this Note over its then remaining term.

**D**

*Love Funding Corporation*
*1250 Connecticut Ave NW*
*Suite 550*
*Washington, DC 20036*

ST08-02276
S. 95
B 6
L 2 + 36

*#.32*

# MORTGAGE

THIS MORTGAGE, made the **2nd** day of **July** , 2009
between
**Vineyard Commons Holdings, LLC,** a limited liability company organized and existing under the laws of the State of
New York  and having its principal place of business at **10 Wintergreen Place, Hopewell Jct., New York  12533**
the MORTGAGOR, and **Love Funding Corporation**
a corporation organized and existing under the laws of          **Virginia**      and having its principal
place of business at **1250 Connecticut Avenue, NW, Suite 550, Washington, D.C.  20036**
the MORTGAGEE,

WITNESSETH, that to secure the payment of an indebtedness in the principal sum of **FORTY-SIX MILLION
FIVE HUNDRED FORTY-FIVE THOUSAND and 00/100ths** Dollars **($46,545,000.00 )**, lawful money of the United
States, consisting of the sum **THREE MILLION THREE HUNDRED EIGHTY-NINE THOUSAND TWO
HUNDRED THIRTY-THREE and 00/100ths** Dollars **($3,389,233.00)**
for land acquisition, legal fees, organization and audit costs, permanent financing fee and supplemental management fee, and the
balance of the principal sum secured hereby, namely **FORTY-THREE MILLION ONE HUNDRED FIFTY-FIVE
THOUSAND SEVEN HUNDRED SIXTY-SEVEN and 00/100ths**    Dollars **($43,155,767.00)**
is being loaned pursuant to the provisions of the Building Loan Agreement referred to in paragraph 16 hereof which sum, or so
much thereof as may be advanced, with interest from date on outstanding balance at **Six and Six-Tenths**
percent **(6.6 %)** per annum, is payable in monthly installments in accordance with the terms of a certain Note or
obligation bearing even date herewith and having a final maturity of  **May 1, 2051** , which Note
is identified as being secured hereby by a certificate thereon. Said Note and all of its terms are incorporated herein by reference
and this Mortgage shall secure any and all extensions thereof, however evidenced.

AND ALSO to secure payment by the Mortgagor to the Mortgagee of all sums expended or advanced by the Mortgagee pur-
suant to any term or provision of this Mortgage; AND ALSO to secure performance of each covenant, term, condition and agree-
ment of the Mortgagor herein contained and in the Regulatory Agreement and Building Loan Agreement hereinafter referred to,
the Mortgagor hereby mortgages to the Mortgagee:

ALL that certain lot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being
in the   City      of    Lloyd    , County of   Ulster    , and State
of New York, bounded and described as follows:  As more particularly described in Schedule "A" attached hereto and
made a part hereof.

Together with all right, title and interest of the Mortgagor in and to the land lying in the streets and roads in front of and
adjoining said premises; and

Replaces Form FHA-4159K, which is Obsolete          (A facsimile prepared by Byrne, Costello & Pickard, P.C.)          HUD-94159K (2-81)
(MULTIFAMILY)

CHECKED
ENTERED
MARK/OFF

*Stewart Title, Inc. Co.*

TOGETHER with all fixtures and articles of personal property now or hereafter attached to or used in and about the building or buildings now erected or hereafter to be erected on the lands herein described which are necessary to the complete and comfortable use and occupancy of such building or buildings for the purposes for which they were or are to be erected including, but not limited to, all awnings, screens, shades, venetian blinds, cabinets, fixtures; and all plumbing, heating, lighting, cooking, laundry, ventilating, refrigerating, incinerating, and air conditioning equipment and fixtures and appurtenances thereto; and such other goods and chattels and personal property as are ever used or furnished in operating a building or the activities conducted therein similar to the one herein described and referred to, and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are, or shall be, attached in said building or buildings in any manner, Mortgagor hereby covenanting for itself and its successors that all the aforesaid property mentioned in this paragraph, all of which is intended to be included in the mortgaged property, when acquired and placed upon the premises, is and shall be owned by it in fee simple, free and clear of all liens and encumbrances; it being hereby mutually agreed that all the aforesaid property shall, so far as permitted by law, be deemed to be affixed to the realty; and together with all building materials and equipment now or hereafter delivered to said premises and intended to be installed therein.

The Mortgagor further covenants and agrees as follows:

1. That Mortgagor will pay the Note at the times and in the manner provided therein;

2. That Mortgagor will not permit or suffer the use of any of the property for any purpose other than the use for which the same was intended at the time this Mortgage was executed; nor will it permit or suffer any alteration of or addition to the building or improvements hereafter constructed in or upon said property without the consent of the Mortgagee;

3. That the Regulatory Agreement, if any, executed by the Mortgagor and the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner, which is being recorded simultaneously herewith, is incorporated in and made a part of this Mortgage. Upon default under the Regulatory Agreement and upon the request of the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner, the Mortgagee, at its option, may declare the whole of the indebtedness secured hereby to be due and payable;

4. That all rents, profits and income from the property covered by this Mortgage are hereby assigned to the Mortgagee for the purpose of discharging the debt hereby secured. Permission is hereby given to Mortgagor so long as no default exists hereunder, to collect such rents, profits and income for use in accordance with the provisions of the Regulatory Agreement;

5. That upon default hereunder Mortgagee shall be entitled to the appointment of a receiver by any court having jurisdiction, without notice, to take possession and protect the property described herein and operate same and collect the rents, profits and income therefrom;

6. That at the option of the Mortgagor the principal balance secured hereby may be reamortized on terms acceptable to the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner if a partial pre-payment results from an award in condemnation in accordance with provisions of Paragraph 8 herein, or from an insurance payment made in accordance with provisions of Paragraph 7 herein, where there is a resulting loss of project income;

7. That the Mortgagor will keep the improvements now existing or hereafter erected on the mortgaged property insured against loss by fire and such other hazards, casualties, and contingencies, as may be stipulated by the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner upon the insurance of the Mortgage and other hazards as may be required from time to time by the Mortgagee, and all such insurance shall be evidenced by standard Fire and Extended Coverage Insurance Policy or policies, in amounts not less than necessary to comply with the applicable Coinsurance Clause percentage, but in no event shall the amounts of coverage be less than 80% of the Insurable Values or not less than the unpaid balance of the insured Mortgage, whichever is the lesser, and in default thereof the Mortgagee shall have the right to effect insurance. Such policies shall be endorsed with standard Mortgagee clause with loss payable to the Mortgagee and the Secretary of Housing and Urban Development as interest may appear, and shall be deposited with the Mortgagee;

That if the premises covered hereby, or any part thereof, shall be damaged by fire or other hazard against which insurance is held as hereinabove provided, the amounts paid by any insurance company in pursuance of the contract of insurance to the extent of the indebtedness then remaining unpaid, shall be paid to the Mortgagee, and, at its option, may be applied to the debt or released for the repairing or rebuilding of the premises;

8. That all awards of damages in connection with any condemnation for public use of or injury to any of said property, shall be paid to the Mortgagee to be applied to the amount due under the Note secured hereby in (1) amounts equal to the next maturing installment or installments of principal and (2) with any balance to be credited to the next payment due under the Note. That all awards of damages in connection with any condemnation for public use of or injury to any residue of that property, shall be paid to the Mortgagee to be applied to a fund held for and on behalf of the Mortgagor which fund shall, at the option of the Mortgagee, and with the prior approval of the Secretary of Housing and Urban Development, either be applied to the amount due under the Note specified in the preceding sentence, or be disbursed for the restoration or repair of the damage to the residue. No amount applied to the reduction of the principal amount due in accordance with (1) shall be considered an optional prepayment in the term is used in this Mortgage and the Note secured hereby, nor relieve the Mortgagor from making regular monthly payments commencing on the first month following the date of receipt of the award. The holder of the Note is hereby authorized in the name of the Mortgagor to execute and deliver valid acquittances for such awards and to appeal from such awards;

9. That in order more fully to protect the security of this Mortgage, together with, and in addition to, the monthly payments of principal and interest payable under the terms of the Note secured hereby, the Mortgagor agrees to deposit with the Mortgagee concurrently with payments of interest or of interest and principal, on the first day of each month after the date hereof until the said Note is fully paid, the following sums:

   (a)   An amount sufficient to provide the Mortgagee with funds to pay the next mortgage insurance premium if this instrument and the Note secured hereby are insured, or a monthly service charge, if they are held by the Secretary of Housing and Urban Development, as follows:

      (I)   If and so long as said Note of even date and this instrument are insured or are reinsured under the provisions of the National Housing Act, an amount sufficient to accumulate in the hands of the Mortgagee one month prior to its due date the annual mortgage insurance premium in order to provide such Mortgagee with funds to pay such premium to the Secretary of Housing and Urban Development pursuant to the National Housing Act, as amended, and applicable Regulations thereunder, or

      (II)   If and so long as said Note of even date and this instrument are held by the Secretary of Housing and Urban Development, a monthly service charge in an amount equal to 1/12 of .45% of the average outstanding principal balance due on the Note computed for each successive year beginning with the first day of the month following the date of this instrument, if the Secretary of Housing and Urban Development is the mortgagee named herein, or the first day of the month following assignment, if the Note and this instrument are assigned to the Secretary of Housing and Urban Development, without taking into account delinquencies or prepayment;

NG-4116-0282-6498, v  1

(b)  A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other property insurance covering the premises covered hereby, plus water rates, taxes and assessments next due on the premises covered hereby (all as estimated by the Mortgagee) less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such ground rents, premiums, water rates, taxes and assessments will become delinquent, such sums to be held by Mortgagee in trust to pay said ground rents, premiums, water rates, taxes and special assessments;

(c)  All payments mentioned in the two preceding subsections of this paragraph and all payments to be made under the Note secured hereby shall be added together and the aggregate amount thereof shall be paid each month in a single payment to be applied by Mortgagee to the following items in the order set forth:

    (I)  premium charges under the Contract of Insurance with the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner or service charge;

    (II)  ground rents, taxes, special assessments, water rates, fire and other property insurance premiums;

    (III)  interest on the Note secured hereby;

    (IV)  amortization of the principal of said Note;

10. Any excess funds accumulated under (b) of the preceding paragraph remaining after payment of the items therein mentioned shall be credited to subsequent monthly payments of the same nature required thereunder; but if any such item shall exceed the estimate therefor the Mortgagor shall without demand forthwith make good the deficiency. Failure to do so before the same becomes delinquent or subject to interest or penalties shall be a default hereunder. In case of termination of the Contract of Mortgage Insurance by prepayment of the mortgage in full, or otherwise (except as hereinafter provided), accumulations under (a) of the preceding paragraph not required to meet payments due under the Contract of Mortgage Insurance, shall be credited to the Mortgagor. If the property is sold under foreclosure or is otherwise acquired by the Mortgagee after default, any remaining balance of the accumulations under (b) of the preceding paragraph shall be credited to the principal of the Mortgage as of the date of commencement of foreclosure proceedings or as of the date the property is otherwise acquired; and accumulations under (a) of the preceding paragraph shall be likewise credited unless required to pay sums due the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner under the Contract of Mortgage Insurance;;

11. That no building on the premises shall be altered, removed, or demolished without the consent of the Mortgagee;

12. That the Mortgagor will pay all taxes, assessments, or water rates, and in default thereof, the Mortgagee may pay the same;

13. That the Mortgagor within five days upon request in person or within ten days upon request by mail will furnish a written statement duly acknowledged of the amount due on this Mortgage and whether any offsets or defenses exist against the Mortgage debt;

14. That the Mortgagor warrants the title to the premises and that this Mortgage is, and will be maintained as, a valid first lien on the premises;

15. That in case of sale under foreclosure the premises may be sold in one parcel;

16. That this Mortgage and the Note secured hereby were executed and delivered to secure moneys advanced or to be advanced and to be used in the construction of certain improvements on the lands herein described, in accordance with a building loan agreement between the parties hereto dated concurrently, and intended to be filed simultaneously herewith, which building loan agreement (except such part or parts thereof as may be inconsistent herewith) is incorporated herein by reference to the same extent and effect as if fully set forth and made a part of this Mortgage, which said building loan agreement Mortgagor hereby covenants to perform; and if the construction of the improvements to be made pursuant to said building loan agreement shall not be carried on with reasonable diligence, or shall be discontinued at any time for any reason other than strikes or lock-outs, the Mortgagee, after due notice to the Mortgagor, or any subsequent owner, is hereby invested with full and complete authority to enter upon the same premises, employ watchmen to protect such improvements from depredation or injury, and to preserve and protect the personal property therein, and to continue any and all outstanding contracts for the erection and completion of said building or buildings, to make and enter into contracts and obligations wherever necessary, either in its own name or in the name of the Mortgagor, or other owner, and to pay and discharge all debts, obligations, and liabilities incurred thereby. All such sums so advanced by the Mortgagee (exclusive of advances of the principal of the indebtedness secured hereby) shall be added to the principal of the indebtedness secured hereby and shall be secured by this Mortgage and shall be due and payable on demand with interest at the rate specified in said Note, but no such advances shall be insured unless the same are specifically approved by the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner prior to the making thereof. The principal sum with interest and other charges provided for herein shall, at the option of the Mortgagee or holder of this Mortgage or the Note secured thereby, become due and payable on the failure of the Mortgagor, or owner, to keep and perform any of the covenants, conditions, and agreements of said building loan agreement. This covenant shall be terminated upon the completion of the improvements to the satisfaction of the Mortgagee and the making of the final advance as provided in said building loan agreement;

17. The Mortgagor covenants that it will not voluntarily create or permit to be created against the property subject to this Mortgage any lien or liens inferior or superior to the lien of this Mortgage;

18. That the Mortgagor will give immediate notice by mail to the Mortgagee of any fire, damage, or other casualty to the premises or of any conveyance, transfer, or change of ownership of the premises. The holder of this Mortgage, its agents or servants, shall have the right to inspect the mortgaged premises from time to time at any reasonable hour of the day;

19. That Mortgagor will not permit or commit any waste on said premises and will keep the buildings thereon and all equipment therein mortgaged in good repair, and promptly comply with all laws, ordinances, regulations, and requirements of any governmental body affecting the said mortgaged premises, and should said premises or any part thereof require inspection, repair, care, or attention of any kind or nature not provided by the Mortgagor, the Mortgagee, being hereby made sole judge of the necessity therefor, may enter or cause entry to be made upon said property and inspect, repair, protect, care for or maintain said property as the Mortgagee may deem necessary, and may pay such sum of money therefor, and shall be the sole judge of the amount necessary to be paid;

20. That upon any default by the Mortgagor in the compliance with, or performance of, any of the terms, covenants, or conditions of this Mortgage or of the Note secured thereby, the Mortgagee may at its option hereby such default; and that all payments made by the Mortgagee to remedy a default by the Mortgagor as aforesaid (including reasonable attorney's fees) and the total of any payment or payments due from the Mortgagor to the Mortgagee and in default, together with interest thereon at the rate specified in said Note per annum shall be added to the debt secured by this Mortgage and shall be repaid to the Mortgagee upon demand. Any such sum and the interest thereon shall be a lien on the premises, prior to any other lien attaching or accruing subsequent to the lien of this Mortgage;

21. That after any default herein or in the Note secured hereby, the Mortgagor or any subsequent owner shall, upon demand, surrender possession of the premises to the holder of this Mortgage, and the holder of this Mortgage may enter upon the premises and let the same and collect all the rents therefrom, which are due, or to become due, and apply the same, after payment of all charges and expenses on account of the indebtedness hereby secured; and all the leases existing at the time of such default, are hereby assigned to the holder of this Mortgage as further security for the payment of said indebtedness. The holder of this Mortgage may also dispossess, by the usual summary proceedings, any tenant defaulting in the payment to the holder of this Mortgage of any rent. In the event that the Mortgagor or any subsequent owner of said premises occupies the same, the Mortgagor agrees for himself and for such owner to surrender possession of the premises to the holder of this Mortgage immediately upon any default hereunder and if said Mortgagor or subsequent owner remains in possession after any default the possession shall be as tenant of the holder of this Mortgage and Mortgagor or such subsequent owner agrees to pay in advance upon demand to the holder of this Mortgage as a reasonable monthly rental for the premises an amount at least equivalent to one-twelfth (1/12) of the aggregate of the twelve monthly installments payable in the then current year, plus the actual amount of the annual taxes, assessments, water rates, and insurance premiums for such year not covered by the aforesaid monthly payments, and in default of so doing such Mortgagor or subsequent owner may also be dispossessed by the usual summary proceedings. This covenant shall

become effective immediately after the happening of any such default, solely on the determination of the then holder of this Mortgage. In case of foreclosure and the appointment of a receiver of the rents, this covenant shall inure to the benefit of such receiver;

22. The Mortgagor covenants and warrants that the improvements about to be made upon the premises above described and all plans and specifications comply with all municipal ordinances and regulations made or promulgated by lawful authority, and that the same will upon completion comply with all such municipal ordinances and regulations and with the rules of the fire rating or inspection organization, bureau, association or office having jurisdiction, which are now or may hereafter become applicable;

23. That the Mortgagor will receive the advances secured by this Mortgage and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement, and that it will apply said advancement before using any part of the total of the same for any other purpose;

24. That so long as this Mortgage and the Note secured hereby are insured or held by the Secretary of Housing and Urban Development, under the provisions of the National Housing Act, the Mortgagor will not execute or file for record any instrument which imposes a restriction upon the sale or occupancy of the mortgaged property on the basis of race, color, creed, or national origin;

25. That the whole of the said principal sum and of any other sums of money secured by this Mortgage shall, forthwith or thereafter, at the option of the Mortgagee, become due and payable upon the happening of either of the following events, irrespective of whether or not the same be remedied by the Mortgagor:

   (a)    Failure to make any monthly payment provided for herein or in the Note secured hereby prior to the due date of the next such installment.

   (b)    Failure of the Mortgagor to perform or comply with any other covenant, agreement, term, or condition of this mortgage or of the Note secured hereby in accordance with the terms hereof and thereof.

26. In the event the Mortgagee shall declare the whole of the said principal sum and of any other sums of money secured by this Mortgage, due and payable as aforesaid, the Mortgagor does hereby authorize and fully empower the Mortgagee to sell the mortgaged premises at public auction, and convey the same to the purchaser according to the statute in such case made and provided;

27. That no waiver of any covenant herein or of the Note secured hereby shall at anytime thereafter be held to be a waiver of the terms hereof or of the Note secured hereby;

28. That if the Mortgagee is made or becomes a party to any suit or action, by reason of this Mortgage or the indebtedness hereby secured, the Mortgagee will pay all expenses incurred by the Mortgagee therein, including a reasonable attorney's fee;

PROVIDED ALWAYS, NEVERTHELESS, that if the Mortgagor shall well and truly pay the said Note and other indebtedness secured hereby, and shall fully keep and perform all the covenants, agreements, terms and conditions in this Mortgage and in the Note secured hereby, then this Mortgage shall be released and discharged at the cost of the Mortgagor.

29. Notwithstanding any other provision contained herein or in the note secured hereby, it is agreed that the execution of this Mortgage shall impose no personal liability upon the Mortgagor for payment of the indebtedness evidenced by said note and in the event of a default, the holder of said note shall look solely to the property subject to this Mortgage and to the rents, revenues, issues and profits thereof in satisfaction of the indebtedness evidenced by said note and will not seek or obtain any deficiency or personal judgment against the Mortgagor except such judgment or decree as may be necessary to foreclose or bar its interest in the property subject to this Mortgage and all other property mortgaged, pledged, conveyed or assigned to secure payment of said note, provided, that nothing in this condition and no action so taken shall operate to impair any obligation of the Mortgagor under the Regulatory Agreement herein referred to and made a part hereof.

The provisions of Rider I attached hereto are incorporated herein.

[Signature on succeeding page]

ND. 4820-2355-6098, v. 1

This Mortgage and every covenant and agreement therein contained shall be binding upon and inure to the benefit of the Mortgagor and the Mortgagee and their respective successors and assigns and to the extent permitted by law shall bind every subsequent owner of the mortgaged premises. Whenever used, the singular number shall include the plural, the plural the singular and the use of any gender shall be applicable to all genders.

This Mortgage has been executed by authority of a Managing Member of the Mortgagor.

IN WITNESS WHEREOF, this Mortgage has been duly executed by the Mortgagor.

Vineyard Commons Holdings, LLC
a New York limited liability company

BY: DDFM, LLC, Managing Member

By: _Denise Barnett_

Denise Barnett, Manager

STATE OF NEW YORK   }
                    } SS:
COUNTY OF NEW YORK  }

On the 1st day of July in the year 2009, before me, the undersigned, personally appeared Denise Barnett, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

LENORE Y. REEVES
Notary Public, State of New York
No. 01RE5034255
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires Oct. 11, 1996-2012

STATE OF NEW YORK

Loan No. 012-35693

Mortgage

Vineyard Commons Holdings, LLC
TO
Love Funding Corporation

NO: 4820-2355-6098, v. 1



**RIDER I**

ATTACHED TO AND MADE A PART OF
MORTGAGE (the "MORTGAGE")

FROM

VINYARD COMMONS HOLDINGS, LLC
TO

LOVE FUNDING CORPORATION

---

THE FOLLOWING PARAGRAPHS ARE ADDED AS ADDITIONAL
PARAGRAPHS TO THE MORTGAGE

29.     SECTION 13 OF THE LIEN LAW OF NEW YORK. The Mortgagor, in compliance with Section 13 of the Lien Law, will receive the advances secured by this Mortgage and will hold the right to receive the advances as a trust fund. The advances will be applied first for the purposes of paying the cost of improvement before using any part of the total of the advances for any other purpose.

30.     ARTICLE 14 OF THE REAL PROPERTY ACTIONS AND PROCEEDINGS LAW OF NEW YORK. A power of sale has been granted in this Mortgage pursuant to Article 14 of the Real Property Actions and Proceedings Law ("Article 14"). Upon default of the Mortgage, the Mortgage shall have the right to sell the Mortgaged Property, foreclosed in the manner prescribed by Article 14 for a non-judicial proceeding for foreclosure.

31.     Maximum Principal Indebtedness. Notwithstanding anything to the contrary contained herein, the maximum amount of principal indebtedness secured by this Mortgage at the time of execution thereof or which under any contingency may be secured by the this Mortgage is FORTY-SIX MILLION FIVE HUNDRED FORTY-FIVE THOUSAND and 00/100ths Dollars ($46,545,000.00) plus (a) taxes, charges or assessments which may be imposed by law upon the Property; (b) premiums on insurance policies covering the Property; and (c) expenses incurred in upholding the lien of this Mortgage, including, but not limited to (i) the expenses of any litigation to prosecute or defend the rights and lien created by this Mortgage, (ii) any amount, cost or charges to which the Mortgagee becomes subrogated, upon payment, whether under recognized principles of law or equity, or under express statutory authority, and (iii) interest at the default rate (or regular interest rate).

32.     In the event of a conflict between the terms and provisions of the Mortgage and this Rider I, the terms and provisions of this Rider I shall control.

Vineyard Commons Holdings, LLC
a New York limited liability company

BY: DDFM, LLC, Managing Member

By: _____
       Denise Barnett, Manager

---

STATE OF NEW YORK        )
                                           ) SS.
COUNTY OF _NEW YORK_  )

On the __1ST__ day of __July__ _____ in the year 2009, before me, the undersigned, personally appeared _____Denise Barnett_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

END OF RIDER I

LENORE L. REEVES
Notary Public, State of New York
No. 01RE5034345
Qualified in Kings County
Certificate Filed in New York County
Commission Expires Nov. ___, 2010

ND: 4820-2355-6093, v. 1

ALTA LOAN POLICY (6/17/06)

**SCHEDULE A DESCRIPTION**

File No.:  ST08-02276                                Policy No.:  M-8912-793630

**PARCEL A**

ALL that certain plot, piece or parcel of land situate in the Town of Lloyd, County of Ulster and State of New York, bounded and more particularly described as follows:

BEGINNING at a point on the Southeasterly line of Vineyard Avenue, AKA Route 44/55, said point being the intersection of the Southeasterly line of Vineyard Avenue with the Southwesterly line of the lands now or formerly of Highland Real Estate Ventures, LLC, as recorded in Liber 3099, Page 187 generally along the remains of a stonewall the following:

S 44°37'43" E - 156.89 feet to a point, thence;
S 45°49'00" E - 316.73 feet to a point, thence;
S 47°21'16" E - 290.54 feet to an iron rod found in the centerline of a stonewall, thence; leaving said line and running along the Northwesterly line of the lands now or formerly of Vineyard Avenue Development, LLC, as recorded in Instrument Number 2006-00028968, the following:
S 38°38'28" W - 166.50 feet to a point, thence;
leaving said line and running along the Northeasterly line of the lands of Vineyard Avenue Development, LLC, the following:
N 46°06'32" W - 764.04 feet along the centerline of an 8 foot wide easement and right-of-way to a point, thence; leaving said line and running along the Southeasterly line of Vineyard Avenue the following:
N 38°37'19" E - 165.86 feet to the point of beginning.
Containing an area of 2.838 acres, more or less. The above herein described parcel also being known as Tax Lot 95.2-6-36 as shown on the current tax maps of the Town of Lloyd.

Being the same premises conveyed to Vineyard Avenue Development, LLC by deed from Henriques/Irvine dated June 27, 2008 and recorded in the Ulster County Clerks Office on July 1, 2008 in Instrument No. 2008-00012290.

WITH THE EXCEPTION therefrom a parcel containing 3463.73 square feet, lying within the right of way lines of Vineyard Avenue, (aka State Route 44/55) about to be acquired by the State of New York. Said 3463.73 square feet parcel being known as Parcel No. 90, Map No. 71, situate in the Town of Lloyd, County of Ulster, State of New York, as shown on a map entitled, "New York State, Department of Transportation, Acquisition Map, Highland-Gardiner, Part 1, S.H. NO. 350, about to be filed in the Regional Office of the NYSDOT. The intention of this exception is to convey any and all of the land lying within said right of way, including all the rights, title, and interest to any portion thereof, to the State of New York.

**PARCEL B**

ALL that certain plot, piece or parcel of land situate in the Town of Lloyd, County of Ulster and State of New York, bounded and more particularly described as follows:

BEGINNING at a point on the Southeasterly line of Vineyard Avenue, AKA Route 44/55, said point being the intersection of the Southeasterly line of Vineyard Avenue with the Northeasterly line of lands now or formerly of

Stillwell, as recorded in Liber 1480 Page 318 and running thence along the Southerly line of Vineyard Avenue, the following:

ALTA LOAN POLICY (6/17/06)

N22°41'10" E - 92.50 feet to a point, thence;

N27°08'50" E - 67.10 feet to a point, thence;

N31°43.15" E - 64.87 feet to a point, thence;

N36°03'10" E - 75.00 feet to a point, thence;

N38°33'55" E - 77.40 feet to a point, thence;

N39°32'00".E - 104.34 feet to a point, thence;

leaving said line and running along the Southwesterly line of lands now or formerly of Vineyard Avenue Development, LLC, as recorded in Instrument No. 2008-00012290 the following:

S 46°06'32" E - 764.04 feet, along the centerline of an 8 foot wide easement and right-of-way to a point, thence; leaving said line and running along the Southeasterly line of lands now or formerly of Vineyard Avenue Development, LLC the following: "

N 38°38'28" E - 166.50 feet to an iron rod found in the centerline of a stonewall on the Southwesterly line of the lands now or formerly of Highland Real Estate. Ventures, LLC, as recorded in Liber 3099, Page 187, thence;

leaving said line and running along the Southwesterly line of the lands now or formerly of Highland Real Estate Ventures, LLC, generally along the remains of a stonewall the following:

S47°21'16" E - 242.23 feet to a point, thence;

S56°30'10" E - 58.30 feet to a point, thence;

S41°09'49" E - 50.87 feet to a point in the Twaalfskill Creek, thence;

leaving said line and running along the Northwesterly line of lands now or formerly of Roberto, as recorded in Liber 821 Page 52, generally through the Twaalfskill Creek the following:

S31°46'40" W - 236.86 feet to a point, thence;

S34°42'48" W - 277.50 feet to a point, thence;

S29°10'30" W - 29.30 feet to a point, thence;

S33°47'25" W - 47.40 feet to a point, thence;

continuing along said line in part through the Twaalfskill Creek, then in part passing over the Northwesterly bank of said creek and continuing generally along the remains of a stonewall the following:

S33°57'07" W - 568.40 feet to a point on the Northerly bank of the Twaalfskill Creek at the intersection of a stonewall if projected, thence;

leaving said line and running along the Northeasterly line of lands now or formerly of Bozydaj, as recorded in Liber 1310 Page 368, generally along the remains of a stonewall the following:

N46°24'16" W - 325.00 feet to a point at the intersection of a stonewall, thence;

continuing along said line the following:

N45°52'16" W - 536.62 feet to a point thence;

leaving said line and running along the Southeasterly line of lands now or formerly of Reina, as recorded in Liber 1574 Page 166, the following:

N34°08'07" E - 138.00 feet to a point, thence;

leaving said line and running along the Northeasterly line of the lands now or formerly of Reina the following:

N55°51'53" W - 15.20 feet to an iron pipe found, thence;

leaving said line and running along the Southeasterly line of lands now or formerly of Coppola, as recorded in Liber 3937 Page 59, the following:

N36°56'32" E - 249.33 feet to a point, thence;

leaving said line and running along the Southeasterly line of lands now or formerly of Stillwell the following:

N32°32'14" E - 140.00 feet to a point, thence;

leaving said line and running along the Northeasterly line of the lands now or formerly of Stillwell the following:

N51°37'23" W - 258.52 feet to a point on the southeasterly side of Vineyard Avenue and the point of beginning.

The above herein described parcel also being known as Tax Lot 95.2-6-2 as shown on the current tax maps of the Town of Lloyd.

Being the same premises conveyed to Vineyard Avenue Development, LLC by deed from Ultra Craft Homes, Inc. dated November 7, 2006, and recorded in the Ulster County Clerk's Office on November 27, 2006 in Instrument No. 2006-00028968.

ALTA LOAN POLICY (6/17/06)
PARCEL "B" IS SUBJECT TO A 20 FOOT WIDE EASEMENT OR RIGHT-OF-WAY to rear of barn to enable
owner of barn to have access to the basement of said barn, as set forth and recorded in Liber 1515 Page 21 and in Liber
1480 Page 318, being bounded and more particularly described as follows:

BEGINNING at a point on the Southeasterly line of Vineyard Avenue, aka Route 44/55, said point being the intersection
of the Southeasterly line of Vineyard Avenue with the Northeasterly line of the lands now or formerly of Stillwell, as
recorded in Liber 1480 Page 318 and running thence along the Southeasterly line of Vineyard Avenue the following:
N22°41'10" E - 20.77 feet to a point, thence;
leaving said line and running over and through the lands of the above herein described parcel "B" the following:
S51°37'23" E - 282.20 feet to a point, thence;
S32°32'14" W - 160.46 feet to a point, thence;
N50°36'23" W - 20.14 feet to a point, thence;
leaving said line and running along the Southeasterly line of lands now or formerly of Stillwell, the following:
N32°32'14" E - 140.00 feet to a point, thence;
leaving said line and running along the Northeasterly lines of lands now or formerly of Stillwell, the following:
N51°37'23" W - 258.52 feet to a point on the southeasterly side of Vineyard Avenue and
the point of beginning.

PARCEL "A" AND PARCEL "B" ARE SUBJECT TO A 30 FOOT WIDE PUBLIC UTILITY EASEMENT being
bounded and more particularly described as follows:

BEGINNING at a point on the Southeasterly line of Vineyard Avenue, aka Route 44/55, said point being the intersection
of the Southeasterly line of Vineyard Avenue and the Southwesterly line of lands now or formerly of Highland Real
Estate Ventures, LLC, as recorded in Liber 3099, Page 187 the following:
S44°37'43" E - 30.21 feet to a point, thence;
leaving said line and running Southwesterly, 30 feet Southeasterly and parallel with the Southeasterly line of Vineyard
Avenue and along the Northwesterly line of parcel "A" the following:
S38°37'19" W - 162.54 feet to a point, thence;
leaving said line and running Southwesterly, 30 feet Southeasterly and parallel with the Southeasterly line of Vineyard
Avenue, over and through the lands of parcel "B" the following:
S39°32'00" W - 104.33 feet to a point, thence;
S38°33'35" W - 25.47 feet to a point, thence;
leaving said parallel line and continuing through the lands of parcel "B" the following:

S02°33'00" W - 127.59 feet to a point, thence;
S11°27'00" E - 61.10 feet to a point, thence;
S52°27'00" E - 238.83 feet to a point, thence;
S05°27'00" E - 85.47 feet to a point, thence;
S39°33'00" W - 191.14 feet to a point, thence;
S14°27'00" E - 313.00 feet to a point, thence;
N84°38'00" E - 80.48 feet to a point, thence;
S50°27'00" E - 38.00 feet to a point, thence;
S31°33'00" W - 40.00 feet to a point, thence;

N83°57'00" W - 110.00 feet to a point, thence;
N14°27'00" W - 361.00 feet to a point, thence;
N39°33'00" E - 194.00 feet to a point, thence;
N05°27'00" W - 60.00 feet to a point, thence;
N52°27'00" W - 237.00 feet to a point, thence;
N11°27'00" W - 76.00 feet to a point, thence;
N02°33'00" E - 90.00 feet to a point being 30 feet Southeasterly from the Southeasterly line of Vineyard Avenue, thence;
S36°03'10" W - 73.21 feet to a point being 30 feet Southeasterly from and parallel with the southeasterly line of Vineyard
Avenue to a point, thence;
S31°43'15" W - 62.54 feet to a point, thence;

ALTA LOAN POLICY (6/17/06)

S27°08'50" W - 64.73 feet to a point, thence;

S22°41'10" W - 99.76 feet to a point on the Northeasterly line of the lands now or formerly of Stillwell, as recorded in Liber 1480, Page 318, thence;

leaving said parallel line and running along the Northeasterly line of the lands now or formerly of Stillwell the following:

N51°37'23" W - 31.16 feet to a point on the Southeasterly line of the Vineyard Avenue, thence;

leaving said line and running along the Southeasterly line of Vineyard Avenue the following:

N22°41'10" E - 92.50 feet to a point, thence;

N27°08'50" E - 67.10 feet to a point, thence;

N31°43'15" E - 64.87 feet to a point, thence;

N36°03'10" E - 75.00 feet to a point, thence;

N38°33'55" E - 77.40 feet to a point, thence;

N39°32'00" E - 104.34 feet to a point, thence;

N38°37'19" E - 165.86 feet to the point of beginning.

## SUBJECT TO THE RIGHTS OF PUBLIC UTILITIES OF RECORD

## PARCEL "A" AND PARCEL "B" ARE SUBJECT TO AN 8' WIDE COMMON EASEMENT OR RIGHT-OF-WAY being bounded and more particularly described as follows:

the centerline of said easement being along EITHER the 5th course of parcel "A" or the 7th course of parcel "B", whereas both are reciprocals of the same course.

E



Ulster County
Nina Postupack
County Clerk
Kingston, NY 12401

09-12292

Volm-9904 Pg-174

60 2012 00002554

Instrument Number: 2012- 00002554
As
Recorded On: February 23, 2012          M02 - Assignment of Mortgage

Parties: LOVE FUNDING CORP
To
SECRETARY OF HOUSING&URBAN DEV          Billable Pages:          7

Recorded By: KENSINGTON VANGUARD          Num Of Pages:          7
Comment:

** Examined and Charged as Follows: **

M02 - Assignment of Mortgage     75.50
Recording Charge:          75.50

** THIS PAGE IS PART OF THE INSTRUMENT **

I hereby certify that the within and foregoing was recorded in the Clerk's Office For: Ulster County,

File Information:
Document Number: 2012- 00002554
Receipt Number: 1122053
Recorded Date/Time: February 23, 2012 12:12:37P
Book-Vol/Pg: Bk-M VI-9904 Pg-174
Cashier / Station: s smar / Cashier Workstation 6

Record and Return To:
LORI HOFFER
EMMET MARVIN&MARTIN LLP
120 BROADWAY
NEW YORK NY 10271



Nina Postupack

Nina Postupack Ulster County Clerk

807051

This Assignment is an Assignment within the secondary market, and, therefore, is not subject to the requirements of the Real Property Law Section 275.

5-95.2
3-6
1-36 and 2

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS:

LOVE FUNDING CORPORATION, a Virginia corporation, having an office at 1250 Connecticut Avenue-NW, Suite 310 Washington, DC, 20036, hereinafter referred to as the Assignor, for value received does by these presents, without recourse, representation or warranty, except as hereinafter set forth, grant, bargain, sell, assign, transfer and set over unto the SECRETARY OF HOUSING AND URBAN DEVELOPMENT, OF WASHINGTON, D.C., HIS SUCCESSORS AND ASSIGNS, having an office at 451 Seventh Street, SW, Washington, D.C., 20410, hereinafter referred to as the Assignee, all right, title and interest in and to that certain:

Mortgage Note and Mortgage each dated July 2, 2009, executed by Vineyard Commons Holdings, LLC, a New York limited liability company, in the original principal amount of Forty Six Million Five Hundred Forty Five Thousand and no/100 Dollars ($46,545,000.00), which Mortgage Note, was made payable to Love Funding Corporation, a Virginia corporation, and which Mortgage Note, is secured by said Mortgage, which was filed for record on August 3, 2009, under Document No. 2009-00012292, in the Ulster County Clerk's Office, New York and covering the following described property:

### SEE EXHIBIT "A" ATTACHED HERETO

TO HAVE AND TO HOLD the same unto the said SECRETARY OF HOUSING AND URBAN DEVELOPMENT OF WASHINGTON, D.C., HIS SUCCESSORS AND ASSIGNS.

This Assignment is without recourse or warranty, except that the undersigned hereby warrants that no act or omission of the undersigned has impaired the validity or priority of said Mortgage. The undersigned also warrants that said Mortgage is prior to all mechanics' and materialmen's liens filed of record subsequent to the recording of such Mortgage regardless of whether such liens attached prior to such recording date, and prior to all liens and encumbrances which may have attached or defects which may have arisen subsequent to the recording of such Mortgage (except such liens or other matters as have been approved by the Assignee hereunder). The undersigned also warrants that, as of the execution of this Assignment, the sum of Forty Five Million Nine Hundred Forty Two Thousand Five Hundred Sixty Four and 00/100 Dollars ($45,942,564.00), together with the interest accruing at the rate of 6.6% per annum, as provided in the said Mortgage Note and Mortgage, is actually due and owing under said Mortgage Note and Mortgage, that there are no offsets or counterclaims thereto, and that the undersigned has a good right to assign the said Mortgage Note and Mortgage.

✓ Kensington Vanguard
39 West 37th St. 7th Floor
New York, NY 10018

CHECKED _____
ENTERED _____
MARKIOFF _____

IN WITNESS WHEREOF, the Assignor has executed this Assignment this _17th_ day of February, 2012.

LOVE FUNDING CORPORATION

Witness:                              By: _Vicki Sammons_
                                      Name: Vicki Sammons
                                      Title:   Vice President

DISTRICT OF COLUMBIA

On the _17th_ day of February, 2012, before me, the undersigned, personally appeared Vicki Sammons, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted executed the instrument.

_Wendy Cromartie_
Notary Public
My Commission Expires _2/14/17_

Prepared by and return after recording to Lori Hoffer, Emmet, Marvin & Martin, LLP, 120 Broadway, New York, NY 10271

Project: Vineyard Commons
Location: Lloyd, New York
FHA No.: 012-35693



EXHIBIT A

## PARCEL A

ALL that certain plot, piece or parcel of land situate in the Town of Lloyd, County of Ulster and State of New York, bounded and more particularly described as follows:

BEGINNING at a point on the Southeasterly line of Vineyard Avenue, AKA Route 44/55, said point being the intersection of the Southeasterly line of Vineyard Avenue with the Southwesterly line of the lands now or formerly of Highland Real Estate Ventures, LLC, as recorded in Liber 3099, Page 187 generally along the remains of a stonewall the following:

S 44°37'43" E - 156.89 feet to a point, thence;
S 45°49'00" E - 316.73 feet to a point, thence;
S 47°21'16" E - 290.54 feet to an iron rod found in the centerline of a stonewall, thence; leaving said line and running along the Northwesterly line of the lands now or formerly of Vineyard Avenue Development, LLC, as recorded in Instrument Number 2006-00028968, the following:
S 38°38'28" W - 166.50 feet to a point, thence;
leaving said line and running along the Northeasterly line of the lands of Vineyard Avenue Development, LLC, the following:
N 46°06'32" W - 764.04 feet along the centerline of an 8 foot wide easement and right-of-way to a point, thence; leaving said line and running along the Southeasterly line of Vineyard Avenue the following:
N 38°37'19" E - 165.86 feet to the point of beginning.
Containing an area of 2.838 acres, more or less. The above herein described parcel also being known as Tax Lot 95.2-6-36 as shown on the current tax maps of the Town of Lloyd.

Being the same premises conveyed to Vineyard Avenue Development, LLC by deed from Henriques/Irvine dated June 27, 2008 and recorded in the Ulster County Clerks Office on July 1, 2008 in Instrument No. 2008-00012290.

WITH THE EXCEPTION therefrom a parcel containing 3463.73 square feet, lying within the right of way lines of Vineyard Avenue, (aka State Route 44/55) about to be acquired by the State of New York. Said 3463.73 square feet parcel being known as Parcel No. 90, Map No. 71, situate in the Town of Lloyd, County of Ulster, State of New York, as shown on a map entitled, "New York State, Department of Transportation, Acquisition Map, Highland-Gardiner, Part 1, S.H. NO. 350, about to be filed in the Regional Office of the NYSDOT. The intention of this exception is to convey any and all of the land lying within said right of way, including all the rights, title, and interest to any portion thereof, to the State of New York.

## PARCEL B

ALL that certain plot, piece or parcel of land situate in the Town of Lloyd, County of Ulster and State of New York, bounded and more particularly described as follows:

BEGINNING at a point on the Southeasterly line of Vineyard Avenue, AKA Route 44/55, said point being the intersection of the Southeasterly line of Vineyard Avenue with the Northeasterly line of lands now or formerly of

Stillwell, as recorded in Liber 1480 Page 318 and running thence along the Southerly line of Vineyard Avenue, the following:

N22°41'10" E - 92.50 feet to a point, thence;
N27°08'50" E - 67.10 feet to a point, thence;
N31°43.15" E - 64.87 feet to a point, thence;
N36°03'10" E - 75.00 feet to a point, thence;
N38°33'55" E - 77.40 feet to a point, thence;
N39°32'00".E - 104.34 feet to a point, thence;
leaving said line and running along the Southwesterly line of lands now or formerly of Vineyard Avenue
Development, LLC, as recorded in Instrument No. 2008-00012290 the following:
S 46°06'32" E - 764.04 feet, along the centerline of an 8 foot wide easement and right-of-way to a point, thence;
leaving said line and running along the Southeasterly line of lands now or formerly of Vineyard Avenue Development,
LLC the following:
N 38°38'28" E - 166.50 feet to an iron rod found in the centerline of a stonewall on the Southwesterly line of the lands
now or formerly of Highland Real Estate Ventures, LLC, as recorded in Liber 3099, Page 187, thence;
leaving said line and running along the Southwesterly line of the lands now or formerly of Highland Real Estate
Ventures, LLC, generally along the remains of a stonewall the following:
S47°21'16" E - 242.23 feet to a point, thence;
S56°30'10" E - 58.30 feet to a point, thence;
S41°09'49" E - 50.87 feet to a point in the Twaalfskill Creek, thence;
leaving said line and running along the Northwesterly line of lands now or formerly of Roberto, as recorded in Liber 821
Page 52, generally through the Twaalfskill Creek the following:
S31°46'40" W - 236.86 feet to a point, thence;
S34°42'48" W - 277.50 feet to a point, thence;
S29°10'30" W - 29.30 feet to a point, thence;
S33°47'25" W - 47.40 feet to a point, thence;
continuing along said line in part through the Twaalfskill Creek, then in part passing over the Northwesterly bank of said
creek and continuing generally along the remains of a stonewall the following:
S33°57'07" W - 568.40 feet to a point on the Northerly bank of the Twaalfskill Creek at the intersection of a stonewall if
projected, thence;
leaving said line and running along the Northeasterly line of the lands now or formerly of Bozydaj, as recorded in Liber
1310 Page 368, generally along the remains of a stonewall the following:
N46°24'16" W - 325.00 feet to a point at the intersection of a stonewall, thence;
continuing along said line the following:
N45°52'16" W - 536.62 feet to a point thence;
leaving said line and running along the Southeasterly line of lands now or formerly of Reina, as recorded in Liber 1574
Page 166, the following:
N34°08'07" E - 138.00 feet to a point, thence;
leaving said line and running along the Northeasterly line of the lands now or formerly of Reina the following:
N55°51'53" W - 15.20 feet to an iron pipe found, thence;
leaving said line and running along the Southeasterly line of lands now or formerly of Coppola, as recorded in Liber 3937
Page 59, the following:

N36°56'32" E - 249.33 feet to a point, thence;
leaving said line and running along the Southeasterly line of lands now or formerly of Stillwell the following:
N32°32'14" E - 140.00 feet to a point, thence;
leaving said line and running along the Northeasterly line of the lands now or formerly of Stillwell the following:
N51°37'23" W - 258.52 feet to a point on the southeasterly side of Vineyard Avenue and the point of beginning.

The above herein described parcel also being known as Tax Lot 95.2-6-2 as shown on the current tax maps of the Town
of Lloyd.

Being the same premises conveyed to Vineyard Avenue Development, LLC by deed from Ultra Craft Homes, Inc. dated
November 7, 2006, and recorded in the Ulster County Clerk's Office on November 27, 2006 in Instrument No. 2006-
00028968.

PARCEL "B" IS SUBJECT TO A 20 FOOT WIDE EASEMENT OR RIGHT-OF-WAY to rear of barn to enable owner of barn to have access to the basement of said barn, as set forth and recorded in Liber 1515 Page 21 and in Liber 1480 Page 318, being bounded and more particularly described as follows:

BEGINNING at a point on the Southeasterly line of Vineyard Avenue, aka Route 44/55, said point being the intersection of the Southeasterly line of Vineyard Avenue with the Northeasterly line of the lands now or formerly of Stillwell, as recorded in Liber 1480 Page 318 and running thence along the Southeasterly line of Vineyard Avenue the following:
N22°41'10" E - 20.77 feet to a point, thence;
leaving said line and running over and through the lands of the above herein described parcel "B" the following:
S51°37'23" E - 282.20 feet to a point, thence;
S32°32'14" W - 160.46 feet to a point, thence;
N50°36'23" W - 20.14 feet to a point, thence;
leaving said line and running along the Southeasterly line of lands now or formerly of Stillwell, the following:
N32°32'14" E - 140.00 feet to a point, thence;
leaving said line and running along the Northeasterly lines of lands now or formerly of Stillwell, the following:
N51°37'23" W - 258.52 feet to a point on the southeasterly side of Vineyard Avenue and
the point of beginning.

PARCEL "A" AND PARCEL "B" ARE SUBJECT TO A 30 FOOT WIDE PUBLIC UTILITY EASEMENT being bounded and more particularly described as follows:

BEGINNING at a point on the Southeasterly line of Vineyard Avenue, aka Route 44/55, said point being the intersection of the Southeasterly line of Vineyard Avenue and the Southwesterly line of lands now or formerly of Highland Real Estate Ventures, LLC, as recorded in Liber 3099, Page 187 the following:
S44°37'43" E - 30.21 feet to a point, thence;
leaving said line and running Southwesterly, 30 feet Southeasterly and parallel with the Southeasterly line of Vineyard Avenue and along the Northwesterly line of parcel "A" the following:
S38°37'19" W - 162.54 feet to a point, thence;
leaving said line and running Southwesterly, 30 feet Southeasterly and parallel with the Southeasterly line of Vineyard Avenue, over and through the lands of parcel "B" the following:
S39°32'00" W - 104.33 feet to a point, thence;
S38°33'35" W - 25.47 feet to a point, thence;
leaving said parallel line and continuing through the lands of parcel "B" the following:

S02°33'00" W - 127.59 feet to a point, thence;
S11°27'00" E - 61.10 feet to a point, thence;
S52°27'00" E - 238.83 feet to a point, thence;
S05°27'00" E - 85.47 feet to a point, thence;
S39°33'00" W - 191.14 feet to a point, thence;
S14°27'00" E - 313.00 feet to a point, thence;
N84°38'00" E - 80.48 feet to a point, thence;
S50°27'00" E - 38.00 feet to a point, thence;
S31°33'00" W - 40.00 feet to a point, thence;

N83°57'00" W - 110.00 feet to a point, thence;
N14°27'00" W - 361.00 feet to a point, thence;
N39°33'00" E - 194.00 feet to a point, thence;
N05°27'00" W - 60.00 feet to a point, thence;
N52°27'00" W - 237.00 feet to a point, thence;
N11°27'00" W - 76.00 feet to a point, thence;
N02°33'00" E - 90.00 feet to a point being 30 feet Southeasterly from the Southeasterly line of Vineyard Avenue, thence;
S36°03'10" W - 73.21 feet to a point being 30 feet Southeasterly from and parallel with the southeasterly line of Vineyard Avenue to a point, thence;
S31°43'15" W - 62.54 feet to a point, thence;

S27°08'50" W - 64.73 feet to a point, thence;
S22°41'10" W - 99.76 feet to a point on the Northeasterly line of the lands now or formerly of Stillwell, as recorded in
Liber 1480, Page 318, thence;
leaving said parallel line and running along the Northeasterly line of the lands now or formerly of Stillwell the following:
N51°37'23" W - 31.16 feet to a point on the Southeasterly line of the Vineyard Avenue, thence;
leaving said line and running along the Southeasterly line of Vineyard Avenue the following:
N22°41'10" E - 92.50 feet to a point, thence;
N27°08'50" E - 67.10 feet to a point, thence;
N31°43'15" E - 64.87 feet to a point, thence;
N36°03'10" E - 75.00 feet to a point, thence;
N38°33'55" E - 77.40 feet to a point, thence;
N39°32'00" E - 104.34 feet to a point, thence;
N38°37'19" E - 165.86 feet to the point of beginning.

SUBJECT TO THE RIGHTS OF PUBLIC UTILITIES OF RECORD

PARCEL "A" AND PARCEL "B" ARE SUBJECT TO AN 8' WIDE COMMON EASEMENT OR RIGHT-OF-
WAY being bounded and more particularly described as follows:
the centerline of said easement being along EITHER the 5th course of parcel "A" or the 7th course of parcel "B", whereas
both are reciprocals of the same course.

**F**

After recording, please
return to:

Kenneth F. Jurist, Esq.
Cuddy & Feder LLP
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601

This instrument
prepared by:

Gregory J. Bolton, Esq.
U.S. Department of Housing and
Urban Development
Office of General Counsel
451 Seventh Street S.W.
Washington, D.C. 20410

## ASSIGNMENT OF MORTGAGE

FHA Project No.: 012-35693
Project Name: Vineyard Apartments
City, State: Lloyd, New York

THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT OF
WASHINGTON, D.C. ("HUD"), 451 Seventh Street S.W., Washington, DC 20410, in
consideration of Ten Dollars ($10.00) and other good and valuable consideration, hereby assigns,
transfers, sets over and conveys to TNHYIF, Inc., c/o True North Management Group, 44 So.
Broadway, 10th Floor, White Plains, New York 10601 ("Assignee"), without recourse, the
following:

1. that certain Mortgage made by Vineyard Commons Holdings, LLC, mortgagor, to Love
   Funding Corporation, mortgagee, dated July 2, 2009, in the principal amount of
   $46,545,000.00, and recorded August 3, 2009, as Instrument No. 2009-00012292, in the
   Ulster County Clerk's Office, and assigned by Assignment of Mortgage, dated February
   17, 2012, from Love Funding Corporation to the Secretary of Housing and Urban
   Development of Washington D.C., and his successors and assigns, duly recorded in the
   Ulster County Clerk's Office on February 23, 2012 as Instrument No. 2012-00002554
   (the "Mortgage"), together with the note secured by the Mortgage (the "Note"); and

2. such other documents, agreements, instruments and other collateral (excluding the
   Regulatory Agreement referenced in the Mortgage) which evidence, secure or otherwise
   relate to HUD's right, title or interest in and to the Mortgage and/or the Note, including
   without limitation the security agreement, if any, and the title insurance policies and
   hazard insurance policies that may presently be in effect.

C&F 1917486 1

**IN WITNESS WHEREOF,** HUD has caused this Assignment to be executed and delivered under seal by its duly authorized agent as of the ___30th___ day of ___August___, 2012.

WITNESS:

SECRETARY OF HOUSING AND
URBAN DEVELOPMENT OF WASHINGTON, D.C.

By: _____
    Authorized Agent  *Marlene L. Robinson*

UNIFORM FORM CERTIFICATE OF ACKNOWLEDGMENT
(Outside of New York State)

State, District of Columbia, Territory, Possession, or Foreign Country

District of Columbia ) ss.:

On the 30th day of August in the year 2012 before me, the undersigned, personally appeared Marlene L. Robinson, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, in the District of Columbia.

_____
Notary Public

[SEAL]

My commission expires ___June 30, 2016___

District of Columbia : SS
Subscribed and Sworn to before me
this 30th day of August, 2012
_____
Nikeisha Joyner-Wiggins, Notary Public, D.C.
My commission expires June 30, 2016

**G**

# NOTICE OF DEFAULT AND ACCELERATION

**TNHYIF, Inc.**
c/o True North Management Group
44 South Broadway
10th Floor
White Plains, New York 10601


September 6, 2012

**REGULAR MAIL and FEDERAL EXPRESS**

Vineyard Commons Holdings, LLC
642 Merlot Drive
Highland, New York 12528
Attn: Ms. Denise Barnett

Vineyard Commons Holdings, LLC
c/o Trifont Liberty Management
1955 Central Park Avenue
Yonkers, New York 10710

Vineyard Commons Holdings, LLC
10 Wintergreen Place
Hopewell Junction, New York 12553
Attn: Ms. Denise Barnett

Re:    Mortgage Note dated July 2, 2009 (the "Note"), made by Vineyard Commons Holdings, LLC ("Borrower"), to Love Funding Corporation (the "Original Lender"), secured by Mortgage dated July 2, 2009 (the "Mortgage"), made by Borrower to the Original Lender, which Note and Mortgage were assigned by the Original Lender to the Secretary of Housing and Urban Development, of Washington, D.C. ("HUD") by Assignment of Mortgage dated February 17, 2012

Dear Sir/Madam:

As described in the "Mortgagor Notification Letter" enclosed herewith, HUD has assigned the Note and Mortgage to TNHYIF, Inc.

Without waiving any other sum that may be due and owing by Borrower under the Note or the Mortgage or any other default by Borrower thereunder, this is to advise you that Borrower has failed to make payments of principal and interest, in the amount of $275,823.51 each, due and owing on the first day of each and every month, commencing June 1, 2011 through and including August 1, 2012. Further, Borrower has failed to remedy each such failure prior to the due date of the next installment of principal and interest then due and owing. Based thereon, TNHYIF, Inc.

hereby declares the entire principal amount of the Note, and any other sums of money secured by the Mortgage, due and owing.

In accordance with the enclosed Statement of Multifamily Mortgage Account sent by HUD to Borrower, dated August 1, 2012, as of said date the unpaid principal balance of the Note was $45,942,564.00 and $4,453,485.43 in interest was then due and owing. Please immediately remit to TNHYIF, Inc., at the above address, the aggregate amount of said unpaid principal and interest, $50,396,049.43, plus per diem interest of $8,307.42 ($45,942,564 x 6.6% ÷ 365) for each and every day occurring during the period commencing (and including) August 1, 2012 through and including the day prior to the delivery to TNHYIF, Inc. of said payment. Upon receipt thereof, if not theretofore applied to pay real estate taxes due and owing, the tax escrow of $98,137.27 shown on the aforesaid Statement shall be returned to Borrower.

Thank you.

Very truly yours,

TNHYIF, Inc.

By: _____
    Desmond McGowan
    Chief Financial Officer

**H**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF ULSTER**

---

**TNHYIF, INC.,**
        Plaintiff(s),

    vs.                        **Index No. 12 - 3216**

**VINEYARD COMMONS HOLDINGS, LLC, WORKERS'**
**COMPENSATION BOARD OF THE STATE OF NEW**
**YORK, NEW YORK STATE DEPARTMENT OF LABOR,**
**VINEYARD COMMONS CLUBHOUSE, INC., VINEYARD**
**COMMONS APARTMENTS INC., et al**
        Defendant(s),



FILED
3 H 15 M

OCT 2 3 2012

Nina Postupack
Ulster County Clerk

COPY

---

AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
COUNTY OF ALBANY )

    KEITH J. CHRISTIANSEN, being duly sworn, deposes and says that: he is over the age of eighteen (18) years, is not a party to the action herein and resides in Voorheesville, NY. That on the 5th day of October 2012, at 3:10 p.m., he served the SUMMONS, VERIFIED COMPLAINT, AMENDED VERIFIED COMPLAINT, ORDER APPOINTING RECEIVER, AMENDED ORDER APPOINTING RECEIVER, AFFIRMATION OF KENNETH JURIST, TOGETHER WITH EXHIBITS A THROUGH D, NOTICE OF PENDENCY, REQUEST FOR JUDICIAL INTERVENTION, the above action, upon VINEYARD COMMONS HOLDINGS, LLC, by delivering two true copies thereof, together with the statutory fee of $40 to the New York State Department of State, pursuant to Section 303 of the Limited Liability Company Law of the State of New York.

Location of Service:  99 Washington Avenue, Albany, NY.
Manner of Service: By Donna Christie, Clerk authorized to accept service.
Description of Person Served:  sex: female, age: 50, skin color: white, height: 5'5",
      Weight: 150, hair color: light.

                               _Keith J. Christiansen_
                                  Keith J. Christiansen

Sworn to before me this
5th day of October 2012

_Jane C. Anderson_

JANE CHRISTIANSEN
Notary Public, State of New York
No. 01CH6196916
Qualified in Albany County
Commission Expires November 17, 20 16

**I**

*No fee*

At an IAS Part of the Supreme Court
held for the County of Ulster at the
courthouse thereof located at 285 Wall
Street, Kingston, New York 12401
on the 13th day of September, 2012.

## COMMERCIAL FORECLOSURE - NOT A SUB-PRIME LOAN OR HIGH COST LOAN

HON. _____Christopher E. Cahill_____ J.S.C.

------------------------------------------------------------------------x

TNHYIF, INC.,

                                        Plaintiff,

      -against-

VINEYARD COMMONS HOLDINGS, LLC, WORKERS'
COMPENSATION BOARD OF THE STATE OF NEW
YORK, NEW YORK STATE DEPARTMENT OF LABOR,
VINEYARD COMMONS CLUBHOUSE, INC., VINEYARD
COMMONS APARTMENTS INC., and "JOHN DOE NO. 1"
through "JANE DOE NO. 12", the last twelve names being
fictitious and unknown to Plaintiff, the persons or parties
intended being tenants, occupants, persons or corporations, if
any, having or claiming an interest in or lien upon the
Premises, described in the Complaint,

                                     Defendants.

------------------------------------------------------------------------x

**ORDER APPOINTING RECEIVER**

Index No. 12-3216

On reading and filing the annexed Affirmation of Kenneth F. Jurist, affirmed on

September 11, 2012, and upon the exhibits annexed thereto, and it appearing to the satisfaction

of this Court that this action is brought to foreclose a commercial mortgage on a parcel of real

estate in the County of Ulster from which it appears that Plaintiff TNHYIF, Inc.("Plaintiff") is

the owner and holder of a certain mortgage on premises hereinafter described, and that the

Defendant, Vineyard Commons Holdings, LLC ("Defendant"), is in default in the payment of

principal in the sum of $45,942,564 with interest on said mortgage and that the within

proceeding has been instituted for foreclosure of said mortgage and that said mortgage contains a

clause authorizing the appointment of a Receiver for all rents and profits of said premises,

without notice, in the event of foreclosure thereof.

NOW, on Motion of Cuddy & Feder LLP, attorneys for Plaintiff, it is *(845)338-8900*

ORDERED, that *Andrew Zweben* of *12 John St., Kingston NY 12401*

is hereby appointed with the usual powers and direction as Receiver for the benefit of Plaintiff of

all the rents and profits now due to become due during the pendency of this action and issuing

out of the mortgaged premises all as set forth in the Complaint and known as 300 Vineyard

Avenue, Lloyd, New York 12528 (the "Mortgaged Premises") as more fully described in

Schedule A annexed hereto; and it is further

ORDERED, that the Receiver is authorized to forthwith take charge and enter into

possession of the Mortgaged Premises; and it is further

ORDERED, that the said Receiver, prior to engaging in any action that may result in

expenses being incurred, be and hereby is directed to contact Plaintiff's attorney, Thomas A.

Cunnane, Jr. of Cuddy & Feder LLP, 445 Hamilton Avenue, 14th Floor, White Plains, New York

10601 to ascertain the status of the foreclosure action and whether he/she should proceed with

his/her duties; and it is further

ORDERED, that before entering upon his/her duties, said Receiver shall be sworn

faithfully and fairly to discharge the trust committed to him/her, and said Receiver execute to

THE PEOPLE OF THE STATE OF NEW YORK and file with the Clerk of the Court a bond

with sufficient sureties to be in the sum of $ *200,00.00* conditioned for the faithful performance

of his/her duties as such Receiver; and it is further

ORDERED, that the Receiver file an oath with the County Clerk; and it is further

C&F 1977010.4

ORDERED, that the Receiver be and he/she hereby is directed to demand, collect and receive from the occupants, tenants, and licensees in possession of the Mortgaged Premises or others liable therefore, inclusive of the mortgagor, all the rents and license fees thereof to become fixed and due now due and unpaid, and hereafter to become due and that the Receiver be and he/she hereby is authorized to institute and carry on all legal proceedings necessary for the protection of the Mortgaged Premises or to recover possession of the whole, or any part thereof, and/or apply to the Court to fix reasonable rental value and license fee value to compel the tenants and occupant(s) to attorn to the Receiver; and it is further

ORDERED, that the Receiver may institute and prosecute suits for the collection of rent, license fees and other charges now due or hereafter to become due or fixed, and summary proceedings for the removal of any tenants or licenses or other persons therefrom; and it is further

ORDERED, that pursuant to the provisions of the General Obligations Law Section 7-105, anybody holding any deposits or advances of rental as security under any lease or license agreement affecting space in the Mortgaged Premises affected by this action shall turn over to the Receiver within five (5) days after the Receiver shall have qualified; and thereupon the Receiver shall hold such security subject to such disposition thereof as shall be provided in an Order of this Court to be made and entered in this action; and it is further

ORDERED, that anybody in possession of same shall turn over to said Receiver all rent lists, orders, unexpired and expired leases, agreements, correspondence, notices and registration statements relating to rental spaces or facilities in the Mortgaged Premises; and it is further

ORDERED, that Defendant and its agents, officers, employees and contractors are hereby directed to deliver and attorn to the Receiver all rent lists, shareholder lists, unexpired and

C&F: 1977010 4

expired leases, proprietary leases, agreements, contracts, recognition agreements, corporate by-laws, correspondence, notices, registration statements, tenants, securities, shareholders, escrows, and lists of current rent or other monies, arrears, relating to space in the Mortgaged Premises; and it is further

ORDERED, that notwithstanding anything to the contrary contained in this order, the Receiver shall not, without the further, prior order of this Court, upon prior notice to Plaintiff, make improvements or substantial repairs to the Mortgaged Premises at a cost in excess of $1,000; and it is further

ORDERED, that said Receiver forthwith deposit all monies received by him/her at the time he/she receives the same in his/her own name as Receiver in *his IOLA account* _____ and no withdrawals shall be made therefrom except as directed by the Court or on a draft or check signed by the Receiver; Receiver shall furnish Plaintiff's attorneys with monthly statements of the receipts and expenditures of the Receivership, together with a photocopy of the monthly statements received from said depository; and it is further

ORDERED, that the Receiver is prohibited from incurring obligations in excess of the monies in his/her hands without further order of the Court or written consent of Plaintiff; and it is further

ORDERED, that the Receiver is authorized to ~~solicit bids to~~ appoint Robert H. Wilder, Jr. as a managing agent to rent and collect the rents of the Mortgaged Premises without the Court's consent, or to pay the reasonable use of such agent's services out of the rents received; and it is further

*CEC*
*JSC*
*9/13/12*

ORDERED, that the Receiver shall procure liability insurance and from time to time, rent or lease all or any part of the Mortgaged Premises for terms of one (1) year or such longer terms

C&F 19770104

as may be required by the State of New York pursuant to applicable rent rules; and keep the Mortgaged Premises insured against loss or damage by fire and other hazards for the benefit of Plaintiff in the event Plaintiff is not the beneficiary of the owner's insurance or Plaintiff does not have its own insurance therefore; and to keep the Mortgaged Premises in repair; and to pay the taxes, assessments, water and sewer rents vault charges, salaries of employees, supplies and other charges; to comply with all the lawful requirements of any municipal department or other authority of the municipality in which the Mortgaged Premises are situated; to procure such fire, plate glass, liability and other insurance as may be reasonably necessary thereon; all in compliance with Section 5228(a) of the Civil Practice Law and Rules; and it is further

ORDERED, that the tenants, subtenants or other persons in possession of the Mortgaged Premises attorn to the Receiver and pay over to the Receiver all rents, license fees and other charges of such premises or other monies of the Mortgaged Premises now due and unpaid or that may hereafter become due; and that Defendant and its agents, officers, employees and attorneys are enjoined and restrained from: (i) collecting the rents, license fees and other charges of the Mortgaged Premises; (ii) interfering in any manner with the Mortgaged Premises or its possession, or with the Receiver's management thereof; (iii) and from transferring, removing or in any way disturbing any of the occupants or employees; and that all the tenants of the Mortgaged Premises and other persons liable for the rents be and they hereby are enjoined and restrained from paying any rents for the Mortgaged Premises to Defendant, its agents, servants or attorneys; and it is further

ORDERED, that all persons now or hereafter in possession of the Mortgaged Premises or any part thereof, and not holding such possession under valid and existing leases, do forthwith

C&F 19770104

surrender such possession to the Receiver at the option of the Receiver, subject to Emergency Rent Laws, if any; and it is further

ORDERED, that the Receiver, after paying the expenses of the management and care of the Mortgaged Premises, retain the balance of the money which may come into his/her hands until the sale of the Mortgaged Premises under the judgment to be entered in this action and/or until further order of the Court; and it is further

ORDERED, that the owner turn over to the Receiver all rents collected from and after the date of this Order; and it is further

ORDERED, that the Receiver comply with all lawful requirements of any municipal department or other authority of the municipality in which the Mortgaged Premises are situated; and it is further

ORDERED, that the Receiver or any party hereto may at any time, on proper notice to all parties who may have appeared in this action, apply to this Court for an order or for instructions or powers necessary to enable such Receiver to properly and faithfully perform his/her duties; and it is further

ORDERED, that the Receiver appointed herein shall continue in his/her duties as such until the receivership is terminated by Court Order; and it is further

ORDERED, that the Receiver appointed herein shall file a monthly accounting from the date of this Order, and each and every month thereafter during the pendency and existence of this receivership, with copies of said accounting to be forwarded to Plaintiff's attorneys; and it is further

C&F: 1977010.4

ORDERED, that the Receiver, upon receiving written notification from Plaintiff's attorneys that the borrower has entered into a forbearance agreement with Plaintiff, shall cease from his/her duties until further notification from Plaintiff's attorneys; and it is further

ORDERED, that the appointee named herein shall comply with Section 35a of the Judiciary Law, CPLR Section 6401-6404, RPAPL Section 1325, and Part 36 of the Rules of the Chief Judge.

**NOTWITHSTANDING ANY OTHER PROVISION OF THIS ORDER TO THE CONTRARY, THE RECEIVER SHALL NOT APPOINT AN ATTORNEY, AGENT, APPRAISER, AUCTIONEER OR ACCOUNTANT WITHOUT PRIOR ORDER OF THIS COURT, WITH THE SOLE EXCEPTION THAT THE RECEIVER IS AUTHORIZED TO APPOINT ROBERT H. WILDER, JR. AS MANAGING AGENT TO RENT AND COLLECT THE RENTS OF THE MORTGAGED PREMISES WITHOUT ANY FURTHER ORDER OF THIS COURT.**

Dated: September 13, 2012

ENTER:

_____

JUSTICE, SUPREME COURT

Christopher E. Cahill
J.S.C.

7

C&F: 1977010.4

09/28/2012  04:59 8453388947            ANDREW P ZWEBEN ESQ            #3217 P.003/009

At an IAS Part of the Supreme Court
held for the County of Ulster at the
courthouse thereof located at 285 Wall
Street, Kingston, New York 12401
on the 26th day of September 2012.

## COMMERCIAL FORECLOSURE - NOT A SUB-PRIME LOAN OR HIGH COST LOAN

HON. CHRISTOPHER E. CAHILL, J.S.C.
------------------------------------------------------------------x

TNHYIF, INC.,

                              Plaintiff,

         -against-                                 **AMENDED**
                                                   **ORDER APPOINTING**
                                                   **RECEIVER**

VINEYARD COMMONS HOLDINGS, LLC, WORKERS'
COMPENSATION BOARD OF THE STATE OF NEW
YORK, NEW YORK STATE DEPARTMENT OF LABOR,  Index No. 12-3216
VINEYARD COMMONS CLUBHOUSE, INC., VINEYARD
COMMONS APARTMENTS INC., and "JOHN DOE NO. 1"
through "JANE DOE NO. 12", the last twelve names being
fictitious and unknown to Plaintiff, the persons or parties
intended being tenants, occupants, persons or corporations, if
any, having or claiming an interest in or lien upon the
Premises, described in the Complaint,

                              Defendants.
------------------------------------------------------------------x

         On reading and filing the annexed Affirmation of Kenneth F. Jurist, affirmed on

September 11, 2012, and upon the exhibits annexed thereto, and it appearing to the satisfaction

of this Court that this action is brought to foreclose a commercial mortgage on a parcel of real

estate in the County of Ulster from which it appears that Plaintiff TNHYIF, Inc.("Plaintiff") is

the owner and holder of a certain mortgage on premises hereinafter described, and that the

Defendant, Vineyard Commons Holdings, LLC ("Defendant"), is in default in the payment of

principal in the sum of $45,942,564 with interest on said mortgage and that the within

proceeding has been instituted for foreclosure of said mortgage and that said mortgage contains a

clause authorizing the appointment of a Receiver for all rents and profits of said premises, without notice, in the event of foreclosure thereof.

NOW, on Motion of Cuddy & Feder LLP, attorneys for Plaintiff, it is

ORDERED, that Andrew Zweben of 12 John Street, Kingston, New York 12401 (845-338-8900) is hereby appointed with the usual powers and direction as Receiver for the benefit of Plaintiff of all the rents and profits now due to become due during the pendency of this action and issuing out of the mortgaged premises all as set forth in the Complaint and known as 300 Vineyard Avenue, Lloyd, New York 12528 (the "Mortgaged Premises") as more fully described in Schedule A annexed hereto; and it is further

ORDERED, that the Receiver is authorized to forthwith take charge and enter into possession of the Mortgaged Premises; and it is further

ORDERED, that the said Receiver, prior to engaging in any action that may result in expenses being incurred, be and hereby is directed to contact Plaintiff's attorney, Thomas A. Cunnane, Jr. of Cuddy & Feder LLP, 445 Hamilton Avenue, 14th Floor, White Plains, New York 10601 to ascertain the status of the foreclosure action and whether he/she should proceed with his/her duties; and it is further

ORDERED, that before entering upon his/her duties, said Receiver shall be sworn faithfully and fairly to discharge the trust committed to him/her, and said Receiver execute to THE PEOPLE OF THE STATE OF NEW YORK and file with the Clerk of the Court a bond with sufficient sureties to be in the sum of $200,000.00 conditioned for the faithful performance of his/her duties as such Receiver; and it is further

ORDERED, that the Receiver file an oath with the County Clerk; and it is further

2

C&F: 1977010.5

ORDERED, that the Receiver be and he/she hereby is directed to demand, collect and receive from the occupants, tenants, and licensees in possession of the Mortgaged Premises or others liable therefore, inclusive of the mortgagor, all the rents and license fees thereof to become fixed and due now due and unpaid, and hereafter to become due and that the Receiver be and he/she hereby is authorized to institute and carry on all legal proceedings necessary for the protection of the Mortgaged Premises or to recover possession of the whole, or any part thereof, and/or apply to the Court to fix reasonable rental value and license fee value to compel the tenants and occupant(s) to attorn to the Receiver; and it is further

ORDERED, that the Receiver may institute and prosecute suits for the collection of rent, license fees and other charges now due or hereafter to become due or fixed, and summary proceedings for the removal of any tenants or licenses or other persons therefrom; and it is further

ORDERED, that pursuant to the provisions of the General Obligations Law Section 7-105, anybody holding any deposits or advances of rental as security under any lease or license agreement affecting space in the Mortgaged Premises affected by this action shall turn over to the Receiver within five (5) days after the Receiver shall have qualified; and thereupon the Receiver shall hold such security subject to such disposition thereof as shall be provided in an Order of this Court to be made and entered in this action; and it is further

ORDERED, that anybody in possession of same shall turn over to said Receiver all rent lists, orders, unexpired and expired leases, agreements, correspondence, notices and registration statements relating to rental spaces or facilities in the Mortgaged Premises; and it is further

ORDERED, that Defendant and its agents, officers, employees and contractors are hereby directed to deliver and attorn to the Receiver all rent lists, shareholder lists, unexpired and

3

C&F: 1977010.5

expired leases, proprietary leases, agreements, contracts, recognition agreements, corporate by-laws, correspondence, notices, registration statements, tenants, securities, shareholders, escrows, and lists of current rent or other monies, arrears, relating to space in the Mortgaged Premises; and it is further

ORDERED, that notwithstanding anything to the contrary contained in this order, the Receiver shall not, without the further, prior order of this Court, upon prior notice to Plaintiff, make improvements or substantial repairs to the Mortgaged Premises at a cost in excess of $1,000; and it is further

ORDERED, that said Receiver forthwith deposit all monies received by him/her at the time he/she receives the same in his/her own name as Receiver in a Receiver's account established for this purpose and no withdrawals shall be made therefrom except as directed by the Court or on a draft or check signed by the Receiver; Receiver shall furnish Plaintiff's attorneys with monthly statements of the receipts and expenditures of the Receivership, together with a photocopy of the monthly statements received from said depository; and it is further

ORDERED, that the Receiver is prohibited from incurring obligations in excess of the monies in his/her hands without further order of the Court or written consent of Plaintiff; and it is further

ORDERED, that the Receiver is authorized to appoint Robert H. Wilder, Jr. and/or WB Residential Communities Inc. as a managing agent to rent and collect the rents of the Mortgaged Premises without the Court's consent, and to pay the reasonable use of such agent's services out of the rents received; and it is further

ORDERED, that the Receiver shall procure liability insurance and from time to time, rent or lease all or any part of the Mortgaged Premises for terms of one (1) year or such longer terms

as may be required by the State of New York pursuant to applicable rent rules; and keep the
Mortgaged Premises insured against loss or damage by fire and other hazards for the benefit of
Plaintiff in the event Plaintiff is not the beneficiary of the owner's insurance or Plaintiff does not
have its own insurance therefore; and to keep the Mortgaged Premises in repair; and to pay the
taxes, assessments, water and sewer rents vault charges, salaries of employees, supplies and
other charges; to comply with all the lawful requirements of any municipal department or other
authority of the municipality in which the Mortgaged Premises are situated; to procure such fire,
plate glass, liability and other insurance as may be reasonably necessary thereon; all in
compliance with Section 5228(a) of the Civil Practice Law and Rules; and it is further

ORDERED, that the tenants, subtenants or other persons in possession of the Mortgaged
Premises attorn to the Receiver and pay over to the Receiver all rents, license fees and other
charges of such premises or other monies of the Mortgaged Premises now due and unpaid or that
may hereafter become due; and that Defendant and its agents, officers, employees and attorneys
are enjoined and restrained from:  (i) collecting the rents, license fees and other charges of the
Mortgaged Premises; (ii) interfering in any manner with the Mortgaged Premises or its
possession, or with the Receiver's management thereof; (iii) and from transferring, removing or
in any way disturbing any of the occupants or employees; and that all the tenants of the
Mortgaged Premises and other persons liable for the rents be and they hereby are enjoined and
restrained from paying any rents for the Mortgaged Premises to Defendant, its agents, servants or
attorneys; and it is further

ORDERED, that all persons now or hereafter in possession of the Mortgaged Premises or
any part thereof, and not holding such possession under valid and existing leases, do forthwith

5

surrender such possession to the Receiver at the option of the Receiver, subject to Emergency Rent Laws, if any; and it is further

ORDERED, that the Receiver, after paying the expenses of the management and care of the Mortgaged Premises, retain the balance of the money which may come into his/her hands until the sale of the Mortgaged Premises under the judgment to be entered in this action and/or until further order of the Court; and it is further

ORDERED, that the owner turn over to the Receiver all rents collected from and after the date of this Order; and it is further

ORDERED, that the Receiver comply with all lawful requirements of any municipal department or other authority of the municipality in which the Mortgaged Premises are situated; and it is further

ORDERED, that the Receiver or any party hereto may at any time, on proper notice to all parties who may have appeared in this action, apply to this Court for an order or for instructions or powers necessary to enable such Receiver to properly and faithfully perform his/her duties; and it is further

ORDERED, that the Receiver appointed herein shall continue in his/her duties as such until the receivership is terminated by Court Order; and it is further

ORDERED, that the Receiver appointed herein shall file a monthly accounting from the date of this Order, and each and every month thereafter during the pendency and existence of this receivership, with copies of said accounting to be forwarded to Plaintiff's attorneys; and it is further

C&F: 19770103

ORDERED, that the Receiver, upon receiving written notification from Plaintiff's attorneys that the borrower has entered into a forbearance agreement with Plaintiff, shall cease from his/her duties until further notification from Plaintiff's attorneys; and it is further

ORDERED, that the appointee named herein shall comply with Section 35a of the Judiciary Law, CPLR Section 6401-6404, RPAPL Section 1325, and Part 36 of the Rules of the Chief Judge.

**NOTWITHSTANDING ANY OTHER PROVISION OF THIS ORDER TO THE CONTRARY, THE RECEIVER SHALL NOT APPOINT AN ATTORNEY, AGENT, APPRAISER, AUCTIONEER OR ACCOUNTANT WITHOUT PRIOR ORDER OF THIS COURT, WITH THE SOLE EXCEPTION THAT THE RECEIVER IS AUTHORIZED TO APPOINT ROBERT H. WILDER, JR. AND/OR WB RESIDENTIAL COMMUNITIES INC. AS MANAGING AGENT TO RENT AND COLLECT THE RENTS OF THE MORTGAGED PREMISES WITHOUT ANY FURTHER ORDER OF THIS COURT.**

Dated: September 26, 2012

ENTER

CHRISTOPHER E. CAHILL, J.S.C.

7

C&P: 1977010.5